HANGER AND WIFE ET AL. VS. FOWLER.

To hold that a solicitor has a lien upon the lands recovered in a Chancery suit, for his reasonable fee, would be introductory of a new principle, and an extension of the doctrine of the solicitor's lien, beyond adjudged cases.

*Appeal from the Chancery Court of Pulaski County.*

This was a bill in equity, filed in the Chancery Court of Pulaski county, by the appellee against the appellants, to enforce a solicitor's lien.

The following brief statement of facts is substituted for that contained in the opinion:

M. Cunningham employed the complainant and other solicitors to prosecute a suit in Chancery for a tract of land. After several years litigation a decree was rendered against Cunningham, which, on appeal to this Court, was affirmed. Cunningham, being unable to prosecute his claim farther, conveyed all his interest to Hanger, his son-in-law, and one of the defendants to this bill. Hanger sued out a writ of error and carried the case to the Supreme Court of the United States; and employed

other counsel to attend to it in that Court. Hanger executed his bond, conditioned, in the event of final success in the suit, to divide the proceeds, after paying all the expenses, among the several children of Cunningham. The decree of this court was reversed by the Supreme Court of the United States, and the cause remanded: and a final decree rendered in favor of the heirs of Cunningham—he having in the mean time departed this life. Cunningham died insolvent, and no administration was taken out on his estate.

The present bill was filed to subject the land, so recovered, in the hands of Hanger, the vendee, and the other defendants, the heirs at law of Cunningham, to the fee of the complainant as the solicitor of Cunningham, in the prosecution of the suit in the Chancery Court and in this Court. The Chancellor decided that the complainant had a lien upon the land in the hands of the defendants, and so decreed. They appealed.

The cause was argued in this Court before Mr. Justice Compton and the Hon. Thomas Johnson, special judge—Mr. Chief Justice English and Mr. Justice Rector, being disqualified.

CUMMINS & GARLAND, for the appellants.

We contend that, without a judgment at law, Fowler could not, by any means, come into equity for relief. It is a well settled principle, that a creditor at large cannot. He must have some basis, some foundation for his bill. What basis or foundation is necessary? It is, that he has his judgment, and his remedies at law are exhausted, and show that *ex necessitate rei,* he is forced to call in the aid of equity. No principle, in ordinary cases, can be clearer than this. *Donalson vs. Bank of Cape Fear, Dev. Eq.* 103; *Livingston vs. Livingston,* 3 *John. C. R.* 51; *Ib. McIntyre vs. Mancius,* 45; *Wiggins vs. Armstrong,* 2 *John. C· R.* 144; *American L'dg. cases in law by Hare & Wallace,* 68; *Neat vs. Duke of Marlborough,* 3 *Mylne & Craig.* 407;* *note* 1, *p.* 241, to same, with numerous authorities cited. And it is even stronger than that, in order to go into equity, to enforce a collection of a claim in its nature a legal

demand.  A *fi. fa.* must be returned *nulla bona,* to authorize the creditor to proceed in equity.  3 *J. J. Marsh.* 63; 1 *Dana.* 516; 2 *Dana* 98; 11 *Sm. & Mar.* 366; 1 *Paige* 636, *Edmeston et al. vs. Lyde, et al.*

It is said here, that this is a solicitor's lien; and, therefore, equity will take jurisdiction, and enforce it.  But, what is a lien? It is neither *jus in re* or *jus ad rem,* but it is simply a right to possess and retain property, until some charge attaching to it is paid or discharged.  1 *Story's Eq. Jurisprudence, sec.* 506. What charge?  And how paid?  Then recur the questions at once.  Is it not too plain, that it must be ascertained that there is a charge, and what the amount of it is, before it can be paid. How can it be ascertained?  Either by agreement of the parties—as in mortgages, or special liens—or by a judgment of a court of competent jurisdiction.  We say, that the rule of law is, that these liens are enforced and satisfied on claims ascertained, no matter what kind they are.  It is done by a jury determining the amount due, or the court sitting " *as a jury,*" or by reference to master or auditor, to state an account between the parties.

And in cases of attorney's and solicitor's liens, the law is plain: the amount must be ascertained and determined, before a court of equity can be called upon to enforce a lien for payment in consideration of services; and, in the case of *Wylie vs. Coxe,* 15 *How.* 415, cited and relied on, to a great extent, by the Chancellor in his opinion, it is shown, that the attorney was to have a stipulated proportion of the amount recovered, that is five per cent., which is exactly carrying out the principle contended for by us.  Here there is no stipulated sum pretended to have been agreed on, but it is left to be determined from services performed, amount of property recovered, etc.; and all the authorities seem to be unanimous in giving him his general lien on the sum found due, or balance due him for such employment.  *Ex parte Stirling,* 16 *Ves.* 259; *Ex parte Pemberton,* 18 *Ves.* 382; *Stevenson vs. Blacklock,* 1 *M. & S.* 535;

12 *Wend.* 261; *note* 1, *sec.* 7, *to Taylor vs. Popham,* 13 *Ves.* 59–7; 7 *Barr* 376.

FOWLER & STILLWELL, for the appellee.

That an attorney or solicitor has a lien upon the judgment or thing recovered, for his reasonable fee in the cause, is a doctrine as old as our system of laws, and is too well settled to be now controverted. See 4 *Barb. S. C. Rep.* 48, *Wilkins vs. Batterman;* 13 *Ark. Rep.* 194, *Sexton et al. vs. Pike;* 1 *Saund. Pl. & Ev.* 155; 1 *Tidd. Pr.* 287, *et seq.;* 1 *Cow. Rep.* 174, *Power vs. Kent;* 15 *Johns. Rep.* 407, *Martin vs. Hawks;* 15 *How. U. S. R.* 419, *et seq.; Whitaker on Liens* 80, 4 *Term Rep.* 123, *Mitchell vs. Oldfield;* 6 *Term Rep.* 457, *Randle vs. Fuller;* 1 *Maule & Sel. R.* 241, *Middleton vs. Hill;* 1 *Doug. Rep.* 238, *Welsh vs. Hole,* 1 *Doug. Rep.* 104, *Wilkins vs. Carmichael;* 13 *Ves., jr.* 62, *a in note* 5; 3 *Smed. & Mar. Rep.* 221, *Pope vs. Armstrong.*

And this *lien* not only extends to the *money adjudged,* but to any *duty* or property *decreed* to the *client.* 15 *Johns. Rep.* 407.

It also extends to money or property *awarded* to the client. 15 *How. U. S. Rep.* 415, *et seq.;* 1 *Tidd. Pr.* 288; *Whitaker's Law of Liens, p.* 83.

And the *client* will *never be permitted* to *run away* with the *fruits of the cause,* without first satisfying the demands of his attorney, by whose labor, industry and expense, those fruits were obtained. See 15 *Johns. Rep.* 406, 407; 6 *Term Rep.* 362, *Reed vs. Dupper;* 13 *Ves., jr.* 62, *a. note* 5.

And, in cases of *such liens,* the *fund* is looked to, and not the PERSONAL responsibility of the owner of the claim. (Hence no necessity for an administration on this insolvent estate.) 15 *How. U. S. Rep.* 420.

These *liens* have *as clear justice* as any other lien. See 4 *N. Hamp. Rep.* 355.

The argument of counsel for the appellants, that it *was necessary* that a *judgment at law* should have been first obtained, we think is utterly untenable, in principle, or by authority, though they have made numerous references, which they doubtless sup-

pose sustain them.   In the case of *Sexton vs. Pike*, no *judgment at law* had been obtained by *Pike* for his fee, or the *amount* in any way PREVIOUSLY fixed.

The attorney's lien is superior, and has *precedence* over a *creditor's bill filed*, etc.   2 *Edw. Ch. Rep.* 109, *Phillips vs. Stagg*.

It is strictly within the range of the chancellor's powers, and even his duty, when the evidence as to the amount is clear, (as it was in this case,) to *find the amount himself*, etc.   1 *Johns. Cas.* 500 *et seq., La Guen vs. Governeer;* 11 *Wend. Rep.* 234, *Idley vs. Bowen;* 4 *Paige Rep.* 568, *Taylor vs. Reed;* 2 *Danl. Ch. Pl. & Pr.* 1499, *et seq.*

And as to such *lien* of the attorney or solicitor, he stands IN THE SAME EQUITY, as if the judgment had been *assigned* to him to the extent of *his fees* and *disbursements* for his client.   See 15 *Johns. Rep.* 407; 4 *Barb. S. C. Rep.* 48, *et seq.;* 13 *Ark. Rep.* 194, *et seq.;* 1 *Cow. Rep.* 174; 4 *Cow. Rep.* 417, *Bradt vs. Koon.*

And, being considered as an *assignee* of the *judgment*, it follows, as a matter of course, that EQUITY is the proper FORUM in which to enforce the *lien.* 13 *Ark. Rep.* 195; 15 *How. U. S. Rep.* 420.

Hon. THOMAS JOHNSON, Special Judge, delivered the opinion of the Court.

The first objection urged against the decree of the chancellor, relates to the jurisdiction of that court.   If the complainant is entitled to a specific lien upon the land recovered by the heirs of Cunningham, there can be no question of the jurisdiction of a court of equity; but if not, then it is equally manifest that the chancellor erred in taking cognizance of the cause. This, then, will be the first point we shall consider.

The case of *Sexton et al. vs. Pike*, 13 *Ark.* 193, has been much relied on in the argument, and as it is an adjudication of this court, and consequently entitled to more weight with us than that of any other State authority, we will first dispose of it. True it is, that this court, in that case, said: " That an attorney has a lien for his fees upon a judgment recovered for his client,

is beyond question. This is not denied, but conceded." That was a case where a bill was filed by the attorney who had obtained a judgment for money, and the question involved was, whether he was entitled to a specific lien upon the judgment in the hands of an assignee. This court held that he was so entitled, and that without notice. That case, therefore, cannot be regarded as an authority in this, where the object is to enforce a specific lien upon real estate. The case of *Creighton & Wife vs. Josiah Ingersoll*, 20 *Barbour's Rep.* 541, is not entitled to any more consideration as authority. That was an action commenced by W. F. Ingersoll and wife, for partition of certain premises. After their attorney had become entitled to certain fees for his services, amounting, according to the then system, supposing the adjustable costs to be the standard of his pay, to between $70 and $80, and had disbursed over $100 in the action, the then plaintiffs assigned their shares of the property to the present plaintiffs, and the latter insisted that they had the right to substitute a new attorney, and to take advantage of all that had been done, without paying the former attorney any thing. That court, at general term, refused to allow the substitution until all the disbursements were paid. After that, the property was sold, and by the judgment, all the costs of the plaintiffs were to be deducted from the fund before the shares should be distributed to the owners. The court say, that " The shares have been distributed and the costs brought into court, in order that the court might determine who was entitled to them," and further, that " the fund is in court, and the court can, and ought to hold it for the benefit of the one equitably entitled to it. And as no one can have a more equitable title than the one by whose exertions the whole fund was created, the court should see that he is paid before any one else carries away the fund." True it is, that they say, that " the assignees, when they bought, must have known that the attorney would have a claim for these costs. And when they took an assignment of the action, as it stood, and the benefit of the progress then made in it, they took it with the burthens then

incident to it, and one of those should be the liability to have the costs then incurred deducted from the recovery by them, when judgment should be obtained, It will be perceived that the term "judgment," was not intended to apply to the shares of the land sought to be divided and distributed, but is confined to the costs to be recovered as incident to such proceeding. The assignment to the present plaintiffs is not only of his share in the lands, but also of all costs and allowances that he might have by the suit. The shares had been distributed and the costs brought into court, in order to determine who was entitled to them. In this attitude of the case, with the costs in court, and, consequently, under its control, there can be no question of the authority to declare it subject to the attorney's lien. This, then, is no authority in support of the decree of the chancellor rendered in this case. The case of *Barnsley vs. Powell, Ambl.* 102, was a petition by the solicitor for Barnsley, (who was a lunatic,) setting forth that he had expended great sums of money in prosecuting suits in the courts of chancery and at law against the defendant, Powell, on behalf of the lunatic, and praying that he might be at liberty to enter up a judgment with a stay of execution against the lunatic, for such moneys, that thereby he might have a lien on his real estate. This was refused by the chancellor, upon the ground that no action would lie against the lunatic, but it must be against the committee of the lunatic, who employed the solicitor. The chancellor said that the committee had a lien upon the lunatic's estate; and being willing, as he said, to assist the solicitor what he could, he would declare the solicitor to stand in the place of the committee, and hold a lien upon the lunatic's estate. That case is reported with a quere, whether he had such a lien, and the counsel for the solicitor doubted of it. That case, then, does not establish the point, that the solicitor had a lien, except by the way of substitution. The control of the person and estate of a lunatic falls into chancery, and the chancellor commits the custody of the person and estate of a lunatic to a committee who is to render his account, and may be required to give bonds.

The committee would, doubtless, be allowed, in his account, to retain in his hands assets of the lunatic sufficient to balance his account, and in this way have a direct lien on the estate; and probably, as the lunatic is incapable of making any contract with the committee, or the committee with the lunatic, and his whole property is within the control of the court of chancery, it might, with propriety, be held, that the committee should have a lien upon the lunatic's estate. But, if so, we think that the principle settled in that case, will not sustain the general proposition contended for by the complainant. True it is, that Lord HARDWICK, in that case, observed, " That if a solicitor prosecutes to a decree, he has a lien upon the estate recovered, in the hands of the person recovering, for his bills, but that if the client should die, the solicitor has no such lien on the estate in the hands of the heirs at law, unless it should be necessary to have the suit revived, and then the lien will revive too. That point was not before the chancellor for adjudication. And in the case at bar, the chancellor having held, that the solicitor held no right of action against the lunatic, we cannot well see how he could have a lien against the estate of the lunatic.

The case of *Turwin vs. Gibson*, 3 *Atkyns* 720, was a decree for money. In that case it was insisted by the petitioner, Margaret Turwin, who was the representative of Arthur Harding, her first husband, and who had left bond debts, that Wade, the solicitor for Arthur Harding, who was the plaintiff in the original cause, had no right to be paid out of the sum decreed for the plaintiff, in preference to Harding's bond creditors. The question in that case was not whether the lien of the solicitor should be extended to real estate, but simply, whether his lien upon a decree for money should take precedence over the bond creditors of the deceased. An attorney hath, in consideration of his trouble, and the money he is in disburse for his client, a right to be paid out of the duty decreed, or money recovered by him. If such money come to the attorney's hands, he may retain to the amount of his bill. He may stop it *in transitu*, if

he can lay hold of it. If he apply to the court, they will prevent it from being paid over till his demand is satisfied; and it seemeth that a payment by a defendant, after notice from an attorney not to pay it till his bill is discharged, would be a payment in his own wrong, and like paying a debt which hath been assigned after notice. He is entitled to be paid out of money levied by a sheriff upon an execution under a judgment recovered by his client; notwithstanding the sheriff may have had notice from the party against whom the execution issued, to retain the money, as the court would be moved to set aside the judgment for irregularity; notwithstanding a docket may have been struck against the client becoming a bankrupt. *Doug.* 238; 3 *Atk.* 720; 1 *H. Black.* 122.

The case of *Smalley et al. vs. Clark et al.*, 22 *Vermont* 598, is the first that we have been able to find, where an attempt has been made to extend the solicitor's lien to real estate, and the court, in response to it, used the following language: " This is the first instance, that I am aware of, in which it has been attempted to extend the attorney's lien, as in this case. In England it is a familiar doctrine, that, in equity, the vendor of real estate has a lien upon the land for the unpaid purchase money; but this is upon the ground of a constructive trust—the vendee holding the legal estate as the trustee of the vendor, to the extent of the lien; and in the case of *Manley et al. vs. Slason et al.*, 21 *Vt.* 271, this English chancery doctrine was applied in this State, though after considerable hesitation. In the case of *Russell vs. Russell*, 1 *Brown's Ch. C.* 269, Lord Thurlow introduced the doctrine of equitable mortgages by means of the deposit of title deeds; and though the decision in that case has been since followed in England, yet it has been universally regretted, as being at variance with the statute of frauds, and as leading to discussions upon the truth and probability of evidence, which it was the object of that statute to exclude. The doctrine, no doubt, is founded upon the idea, that a mere deposit of title deeds furnished evidence of an agreement to make a mortgage. I am not aware, that our courts have ever been

called upon to introduce the English chancery doctrine of equitable mortgages, and it may well be questioned, whether they will do it if called upon."

We have carefully examined every authority within our reach, and the result of our investigations is, that no one has been discovered where the solicitor's lien has been extended to the length claimed in this case. If such a lien, as is contended for in this case, existed in England, or in the United States, it is somewhat remarkable that adjudged cases are not to be found, in which it has been recognized and enforced. We are not aware of any such case; and none has been cited on the argument: and the absence of such cases, especially as there would have been frequent occasions for enforcing the lien if it existed, furnishes a strong argument that no such lien does exist. We think, then, to hold that the solicitor's lien attached to the land recovered by the heirs of Cunningham, would be introductory of a new principle, and an extension of the doctrine of the solicitor's lien beyond any adjudged case, and would, in effect, be to create an equitable mortgage, which would be exposed to all the objections that have, or can be made to the doctrine of equitable mortgages in England, and even more, under our registry system, without having the same plausible ground to stand upon, which is the presumed agreement to execute a legal mortgage. The result then, is, that the decree of the chancellor, declaring the land in question subject to the lien of the complainant for the sum of five thousand dollars, and directing it to be sold in default of payment, should be, and the same is hereby reversed. Let the cause be remitted to the Court of Chancery of the county of Pulaski, with instructions to dismiss the bill for want of equity.