BROWN & REID *v.* D. W. BIGLEY and others.

April Term, 1878.

LAWYER'S LIEN ON LAND — PRIORITY OVER OTHER CREDITORS. — The lien of a lawyer on land for professional services, declared by order of the court in the case in which the services were rendered, is entitled to priority of satisfaction over the lien of a judgment-creditor of the client, acquired by subsequent decree of the Chancery Court, sale thereunder, and purchase of the land, where the bill to enforce the lawyer's lien is filed before the sale is confirmed.

*Brown & Reid*, for complainants.
*Bate & Williams*, for defendants.

THE CHANCELLOR : — The question sought to be raised by the demurrer in this case, and argued by counsel, is whether the lien of an attorney for professional services, on land, declared by the court in the suit in which the services were rendered, has priority over the lien of a creditor of the client, acquired subsequently by bill filed and decree of this court before the attorneys have taken any step to enforce their lien.

The land in controversy was originally the property of E. B. Bigley, the father of the defendant D. W. Bigley, and was by him conveyed in mortgage to the Nashville Building Association, and afterwards in trust to secure a debt

due to one A. J. Baker. The Building Association sold and bought the land under its mortgage, and then conveyed it, on June 28, 1870, to the defendant D. W. Bigley. On April 10, 1871, A. J. Baker filed his bill in this court against the Building Association and the Bigleys, seeking to set aside the mortgage to the association as fraudulent, and to subject the land to the satisfaction of his debt under the trust-deed, and, if this could not be done, to redeem. The complainants, Brown & Reid, eminent solicitors of this court, were employed professionally by the Bigleys in that cause, and rendered valuable services in its successful management in behalf of their clients. Such proceedings were had in the suit that, first, by the decree of this court, and, secondly, upon appeal, by the decree of the Supreme Court, the last decree being rendered on February 27, 1875, Baker's bill was dismissed, and the title of D. W. Bigley sustained. By the same decree, the complainants, Brown & Reid, were declared to have a lien on the land in controversy for the fee due them from the Bigleys for their professional services. On March 8, 1878, they filed this bill, for the enforcement of the lien, against D. W. Bigley and certain voluntary grantees under him. On March 13, 1878, the bill was amended by making Benjamin Culbertson, Isaac F. Baker, and I. I. Green parties defendant. The amended bill alleges that these defendants, in November, 1877, recovered a decree in this court against D. W. Bigley and others for the sale of the land in controversy, and that, under this decree, the land was sold on March 2, 1878, and purchased by said defendants.

The demurrer is filed by these defendants, and has been argued as if the demurrants were creditors of D. W. Bigley, and, as such, had, by proceedings commenced since the declaration of the complainants' lien by the Supreme Court, obtained the decree of November, 1877, for a sale of the land in satisfaction of their debt. But the bill does not disclose the nature of their demand, nor against whom it

exists, nor when nor how it originated, nor when the suit was instituted under which the decree was rendered. It simply states that the complainants are ignorant of the nature and validity of the claim. The fifth cause of demurrer assigned is, that the bill fails to show any equities against the defendants, and is probably well taken. But the demurrer has not been relied on in that view. The argument has been addressed to the respective priorities of the litigants, as if the facts were before the court by the pleadings as they have been orally presented. I will treat the case accordingly, although it is obvious the bill ought to be amended so as to show the facts, if the parties expect to have their rights permanently settled by a decree on the demurrer.

A point is made in the demurrer, and in argument, on the effect of the act of 1877, ch. 120. That act provides "that the title to the real estate shall not be in any manner affected, as to third parties, by any lien acquired by any judgment, decree, bill in equity, judicial attachment, *lis pendens*, levy of attachment, or levy of execution, without actual notice thereof, till an abstract of such proceedings shall be filed for record in the register's office." But that act is a two-edged sword in the present case, as it stands. If the complainants' lien as declared is of no validity without registration, neither is the defendants' decree, for it does not appear to have been registered. The sale and purchase of the land under the decree amounts to nothing until confirmation. The rights of the parties must be determined as if no such act had ever been passed. Besides, the want of actual notice is matter of defence by proper pleading, and the complainants' lien is, perhaps, not included in the specific enumeration of the statute. Moreover, the statute does not purport to act retrospectively, and the rule, in such case, is to treat it as operating only upon future rights. *Wood* v. *Orr*, 10 Yerg. 505.

The stress of the argument, as well as the main point of

the demurrer, rests upon the fact that the bill fails to show any registration of the lien as declared by the decree of February 27, 1875, or any step taken to enforce it until after the demurrants, considered as creditors of D. W. Bigley, had acquired their rights by decree. The issue made involves the nature of a lawyer's lien, and the effect of its being declared by decree in the suit in which the services were rendered.

In England, and the rule has been generally followed in this country with an extension to the honorary fees of counsel, the solicitor has a lien upon his client's deeds, or other papers, which applies to all costs as between solicitor and client. This is a lien which he cannot actively enforce, and which amounts to a mere right to retain the papers, as against his client, until he is fully paid. He is also entitled to a lien upon the fund realized by his services, which is confined to the costs of the particular suit, and which he can actively enforce by order in that cause. *Turwin* v. *Gibson*, 3 Atk. 719 ; *Bozon* v. *Bollard*, 4 Myl. & Cr. 354 ; *Stedman* v. *Webb*, 4 Myl. & Cr. 346 ; *Welsh* v. *Hole*, Doug. 238 ; *Read* v. *Dupper*, 6 Term Rep. 361 ; *In re Paschall*, 10 Wall. 483 ; *McGregor* v. *Comstock*, 28 N. Y. 237 ; *Rooney* v. *Second Avenue, etc.*, 18 N. Y. 368. The lien is on the recovery, and does not prevent the client from compromising or receiving payment before judgment, nor afterwards, unless notice of the lien be given to the debtor. *Moore* v. *Anquell*, 2 New Pr. Cas. 194 ; *Marshall* v. *Meech*, 51 N. Y. 140 ; *Pulver* v. *Harris*, 52 N. Y. 73 ; *Young* v. *Dearborn*, 27 N. H. 324 ; *Averill* v. *Longfellow*, 66 Me. 237. To the same effect was the decision of our Supreme Court in *Hoag* v. *Avery*, at Jackson, April term, 1866, cited in 1 King's Dig., sec. 970, and Heisk. Dig., sec. 224, and also in *Clement* v. *The State*, 1 Tenn. Leg. Rep. 261. The rule is different where a fund has been attached, or otherwise impounded. *Pleasants* v. *Kortretcht*, 5 Heisk. 694. In England, the lien has been regulated by statute, 23 & 24

Vict., c. 127, sec. 28, and made much more effective. *Jones* v. *Frost*, L. R. 7 Ch. App. 773.

In *Barnesley* v. *Powell*, Amb. 102, the solicitor filed a petition, stating that he had expended large sums in prose-cuting suits on behalf of Barnesley, who was a lunatic, against defendant Powell, and praying that he have liberty to enter up a judgment against the lunatic for such moneys, "that thereby he may have a lien on his real estate." Lord Hardwicke thought that the remedy of the petitioner was against the committee of the lunatic who had employed him, but said that the committee had a lien on the lunatic's estate, both real and personal, and that the court would assist the solicitor by declaring him to stand in the place of the committee, and a decree was so entered accordingly. Chancellor Kent refers to this decision in the *Matter of Southwick*, 1 Johns. Ch. 22, and treats it and the like ruling, in *Ex parte Price*, 2 Ves. 407, as subrogating the solicitor to the lien of the committee, adding that the remedy of the solicitor is, ordinarily, at law. But the report in Ambler makes Lord Hardwicke say: "If a solicitor prosecutes to a decree, he has a lien on the estate recovered in the hands of the person recovering for his bills; but if the client should die, the solicitor has no such lien on the estate in the hands of the heir-at-law, unless it should be necessary to have the suit revived, and then the lien will revive too." But this *dictum*, so far as it implied a lien on real estate, was sum-marily overruled by the House of Lords in *Shaw* v. *Neale*, 6 H. L. Cas. 581, 591. The counsel for the solicitor in that case, which raised the direct question of a solicitor's lien on land, cited *Barnesley* v. *Powell*, and said: "There is no question but that the solicitor would be entitled to a lien on a fund in court, or on the papers in his hands, and there is no principle on which to distinguish between a fund obtained by the prosecution of a suit, and an estate obtained in the same manner" (p. 589). To which the following inter-jectional responses were at once made by two of the learned

law lords: "Lord Wensleydale. 'I never heard such a proposition at law.' Lord St. Leonards: 'Nor I in equity.'" The American cases are in accord. *Smalley* v. *Clark*, 22 Verm. 598; *Stewart* v. *Flowers*, 44 Miss. 513; 20 Ark. 667.

The difficulty in extending the solicitor's lien to land in England grew out of the courts treating it as a legal right, and, consequently, dependent upon possession. A lien at law, it has been said, is not in strictness either a *jus in re* or a *jus ad rem*, but simply a right to possess and retain property until some charge attaching to it is paid or discharged. But there are liens recognized in equity whose existence is not known nor obligation enforced at law, and in regard to which it may be stated, generally, that they arise from constructive trusts. They are, therefore, wholly independent of the possession of the thing to which they are attached as a charge or encumbrance, and they can be enforced only in a court of equity. Story's Eq. Jur., sec. 1217. The vendor's lien for unpaid purchase-money, where he has parted with the title, is a noted instance. *Mackreth* v. *Symmons*, 15 Ves. 329; *Brown* v. *Vanlier*, 7 Humph. 239. The lien of a purchaser of land who has paid a part of the purchase-money, and the vendor is unable to make a title, is another. *Rose* v. *Watson*, 10 H. L. Cas. 672; *Burgen* v. *Wheate*, 1 Eden, 211. So, the lien of a person who has made permanent improvements on land under a void contract of purchase (*Mathews* v. *Davis*, 6 Humph. 324); or under a parol gift (*Ridley* v. *McNairy*, 2 Humph. 174); or where there has been a rescission. *Humphreys* v. *Holtsinger*, 3 Sneed, 229. So, the lien of a joint purchaser for excess of payments or improvements (*Sweet* v. *Henson*, 5 Humph. 49; *Pearl* v. *Pearl*, 1 Tenn. Ch. 206); the lien of a trustee for advances (*Worrall* v. *Harford*, 8 Ves. 8); the lien of one partner on partnership property, no matter in whom the title may be (*Taylor* v. *Fields*, 4 Ves. 396; *Cammack* v. *Johnson*, 1 Green Ch. 163; *Haskins* v. *Everett*, 4 Sneed, 531); the resulting trust arising from the payment of the purchase-money. *Smitheal* v. *Gray*, 1 Humph. 491.

The inclination of the courts of this country, and of none more so than those of this state, has been to enlarge the doctrine of equitable liens and charges, with a view to the attainment of the ends of justice, without much respect for the technical restrictions of the common law.   It was a logical result of this tendency that our Supreme Court should follow the lead of Lord Hardwicke, made before the Revolution, rather than the modern doctrine of the House of Lords. And it was both natural and wise that the lien of the lawyer on the fruits of his professional labor should be treated as equitable, rather than legal.   The proper administration of justice is essential to the well-being of the republic, and cannot be secured without an enlightened and prosperous bar.   The distinction, moreover, between land and personalty, in the comparative immunity of the former from liability and charge, which existed in our mother country, has never prevailed in the United States.   And there is point, therefore, with us, in the remark of counsel in *Shaw* v. *Neale*, that there is no principle on which to distinguish between a fund and an estate obtained by the prosecution of a suit. Under these circumstances, our Supreme Court, in *Hunt* v. *McClanahan*, 1 Heisk. 503, reached the conclusion that lawyers were entitled to a lien on the property recovered or protected by their services, real as well as personal, which would be declared by the court, upon the application of the attorney by petition, in the suit in which the services were rendered.   "We hold," says the learned judge who delivers the opinion, "that an attorney is entitled to an equitable lien on the property or thing in litigation for his just and reasonable fees, and that the client cannot, while the suit is pending, so dispose of the subject-matter in suit as to deprive the attorney of his lien, *nor afterwards to any purchaser with notice*.   The pendency of the suit is, of itself, notice to all persons, *and the lien may be preserved and the notice extended* by stating its existence in the judgment or decree."   And it was referred to the master to hear proof, and report what would be reasonable compen-

sation to the petitioners; and, it is added, "their lien, to that extent, will be declared as having existed from the commencement of the suit, and be enforced by a proper decree."

In *Perkins* v. *Perkins*, 9 Heisk. 95, a case decided a year afterwards at Nashville, the general principle announced in *Hunt* v. *McClanahan* was recognized, but the practice of making a reference to ascertain the fee was limited to cases where the client is under disability, and the practice of enforcing the lien to such cases, and cases where the client *sui juris* might agree with the attorney as to the amount of his fee. In the case of disability, the proceeding is *in invitum*, and notice must be given the client, who is entitled to be properly represented. If the client be *sui juris*, and do not agree with the attorney as to the amount of the fee, it was said that the court should do no more than declare the lien, leaving the attorney "to enforce his claim by an appropriate proceeding against his client." Both of these cases were chancery suits, and did not, therefore, raise the point as to the jurisdiction of any other court to enforce the lien. And in the first case, where the application was made in the Supreme Court, nothing was said in reference to the jurisdiction of that court to enforce a lien by a proceeding *in invitum* commenced in that court.

Under these two decisions, I sustained a reference, upon the application of the solicitors of a lunatic and a married woman, in *Yourie* v. *Nelson*, 1 Tenn. Ch. 614, and a similar reference, where the services were rendered for infants, in *Bowling* v. *Scales*, 1 Tenn. Ch. 618, and *Carter* v. *Montgomery*, 2 Tenn. Ch. 455. In the cases of the lunatic and the infants, I recognized the principle that the committee of the lunatic and guardian of the infants were the persons entitled to the lien, and that the solicitor obtained relief by way of subrogation; following, in this respect, *Stewart* v. *Hoare*, 2 Bro. C. C. 662, and *Barnesley* v. *Powell*, Amb. 102. And see *Cowdrey* v. *Galveston, etc., R. Co.*, 93

U. S. 352. The principal ruling in *Perkins* v. *Perkins* has been recently repeated in *Steel* v. *Chester*, 1 Tenn. Leg. Rep. 211.

Considering it, then, as settled that the lien of the attorney may be declared in the suit in which the services are rendered, and that the attorney must then enforce the lien by appropriate proceedings " in a court having jurisdiction of the question," the complainants were entitled to file the present bill. For the enforcement of equitable liens belongs to this court, and the appropriate mode of proceeding is by original bill. Clearly, too, the lapse of time since the services were rendered and the lien declared offers no obstacle to the assertion of their rights as between them and their late client Bigley. In the case of a personal judgment, the lien of the attorney may be extended beyond its rendition by notice to the debtor, so that it will not be lost by several years' delay. *Stone* v. *Hyde*, 9 Shepley, 318. And the lien is binding upon an assignee of the judgment. *Cunningham* v. *McGrady*, 2 Baxt. 141. In like manner, if the title of the client to the land depends upon the decree in which the lien is declared, so as to be notice to any person acquiring a title under the debtor, or if the declaration of the lien be itself notice, then the delay would not prejudice the right as to any person subject to be affected by notice. But the argument is that the lien, like that of the vendor who has parted with the title, is purely equitable, and that creditors are not affected by notice. *Roberts* v. *Rose*, 2 Humph. 145 ; *Fain* v. *Inman*, 6 Heisk. 5.

The attorney's lien, according to the decision in *Hunt* v. *McClanahan*, dates from the commencement of the suit in which the services were rendered, the pendency of the suit being itself notice to all persons of the existence of the lien ; and, the court add, " the lien may be preserved and the *notice extended* by stating its existence in the judgment or decree." It has not been contended, and, I presume, cannot be, that the " notice to all persons " given by the pen-

dency of the suit would not affect the creditors of the client,. as well as purchasers under him. The lien would, other- wise, be of little value. But if the notice given by the pending suit includes creditors, the notice extended by stating the existence of the lien in the decree must equally include creditors. The court manifestly contemplate that the notice thus extended shall have all the efficacy of the notice by *lis pendens.* In this view, the point must be con- sidered as settled by the decision of the Supreme Court in *Hunt* v. *McClanahan.* And the distinction between the lawyer's lien and the vendor's lien is, that the former is an actual lien declared by record which fixes the right and is "notice to all persons," while the latter is "a mere capacity to acquire a lien " by taking proper proceedings, and not a lien until those proceedings are taken. *Fain* v. *Inman,* 6 Heisk. 15.

It is assigned as a ground of demurrer that the bill does not show any registration of the decree declaring a lien, our registry laws looking to notice of liens on realty in that mode to affect the rights of creditors. But there is no pro- vision for the registration of such a lien, nor of a decree in the attitude of the decree in question, if we treat the declaration of the lien as a judgment or decree. The Code, sec. 2030, subsecs. 15, 16, 17, only provides for the regis- tration of judgments or decrees when rendered in a county other than that of the defendant's residence, where it divests and vests title, and when the object is to acquire a lien on equitable estates. But this decree was rendered in the county of the defendant Bigley's residence, does not purport to divest and vest title, and the estate sought to be reached is legal, not equitable. Moreover, the Code, sec. 2075, only makes instruments, which are required by law to be registered, void, if unregistered, " as to existing or subsequent creditors of, or *bonâ fide* purchasers from, the makers without notice." But a right acquired by judicial decree on the property of the client can scarcely be con-

strued to be the act of the latter, so as to bring him within the word "makers" of the statute. And judicial sales, it is settled, and, à fortiori, judicial charges and liens are not within the purview of the registry laws. *Floyd* v. *Goodwin*, 8 Yerg. 484; *Dromgoole* v. *Spence*, 1 Memphis L. J. 159. And the declaration of a lien is clearly not a judgment which must be executed within the year in order to its efficacy, for the judgment contemplated by the statute is a moneyed demand, for which an execution may issue. Code, sec. 2982. It is a mere charge, and not "a determination of the rights of the parties," under the Code, sec. 2970. Whatever may be the effect of declaring the lawyer's lien, and I am bound by the decisions to give it some effect, there is nothing in the statutes which requires it to be registered in order to that effect, nor limiting its duration to any specified time short of the ordinary period of limitation applicable to the particular demand.

The demurrants in this case, upon the facts on which their rights have been rested in argument, and which I am taking for granted, although not stated in the bill, are judgment-creditors of Bigley. "No man," says the Master of the Rolls, "can call a judgment-creditor a purchaser; nor has such creditor any right to the [debtor's] land; he has neither *jus in re* nor *ad rem*. All that he has by the judgment is a lien on the land." *Brace* v. *Duchess of Marlborough*, 2 P. W. 491. At law, a judgment is a general lien on the legal interest of the debtor in his real estate; but in equity that general lien is so controlled as to protect the rights of those who are entitled to an equitable interest in the land, or the proceeds thereof, or who have an equitable lien or charge equally as meritorious as that of the judgment-creditor. The court of chancery will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment-debtor has in the estate. *Burgh* v. *Francis*, Finch, 28; *Finch* v. *Earl of Winchelsea*, 1 P. W. 282; *Matter of*

*Howe,* 1 Paige; 125 ; *Keirsted* v. *Avery,* 4 Paige, 15 ; *Brown* v. *Pierce,* 2 Wall. 205, 218. And a purchaser under the execution in such case, with notice certainly, and in some instances without notice, will take subject to the equity. Or, to use the language of our own Supreme Court, a purchaser at execution sale takes precisely as the defendant held, subject to all equities that he was, and liable to convey to others as he was. *Berry* v. *Walden,* 4 Hayw. 174 ; *Whitworth* v. *Gaugain,* 3 Hare, 416, 425 ; *White* v. *Carpenter,* 2 Paige, 217, 267 ; *Moyer* v. *Hinman,* 13 N. Y. 180 ; *Siemon* v. *Schurck,* 29 N. Y. 598 ; *Freeman* v. *Mebane,* 2 Jones Eq. 44. And, *e converso,* an equitable or imperfect lien or title, which would be good against the defendant in a judgment, is equally good against the judgment-creditor, or a purchaser with notice under the judgment. *Bank* v. *Campbell,* 2 Rich. Eq. 191 ; *Delaire* v. *Keenan,* 3 Desau. 74 ; *Hoagland* v. *Latourette,* 1 Green Ch. 254 ; *Gouverneur* v. *Titus,* 6 Paige, 347. It was upon these general principles that the lien of a vendor for unpaid purchase-money, although he had parted with the title, was preferred in equity to the claim of a judgment-creditor, or a purchaser under his execution. 2 Story's Eq. Jur., sec. 1228. The policy of our registration laws has been allowed to overrule the general doctrine in the case of this particular lien, although not embraced within the letter of those laws. But a different conclusion has been reached in relation to other equities, resting upon the same principles, where the analogy of the registration laws was less obvious. Thus, the equity of a joint owner of real or personal property, to be reimbursed the excess of his expenditures in the purchase or improvement of the joint property, or otherwise created, is held to be superior to the rights of a judgment-creditor of the co-owner seeking satisfaction out of his interest. *Coleman* v. *Pinkard,* 2 Humph. 185 ; *Sweat* v. *Henson,* 5 Humph. 49 ; *Williams* v. *Love,* 2 Head, 80 ; *Withers* v. *Pemberton,* 3 Coldw. 56. So, of the lien of a

partner on partnership property, without regard to the question of the legal title, as against individual creditors of the other partner. *Haskins* v. *Everett*, 4 Sneed, 531, and other cases *ut supra*. So, the equity or trust resulting from the payment of the purchase-money. *Thomas* v. *Walker*, 6 Humph. 93; *Sandford* v. *Weeden*, 2 Heisk. 81. So, of the lien of a trustee for advances, or expenditures for the benefit of the trust-estate. *Shacklett* v. *Polk*, 4 Heisk. 113; *Morrison* v. *Morrison*, 7 De G. M. & G. 226; Perry on Tr., sec. 907. The lawyer's lien seems to fall within these classes, rather than within the analogy of the vendor's equity. For, it is difficult to see how the policy of the registry-laws can affect an equitable lien which is not required nor authorized to be registered, which, it is to be hoped, is "not quite a myth," and which is an actual lien judicially declared, and not "a mere capacity to acquire a lien."

The underlying principle of the decisions touching these equitable liens as against creditors is, that the creditor's right is to subject the property of his debtor. He has no right to subject the interest of a third person in the property of the debtor, even if it be a mere lien or equity. All the authorities agree that, independent of the registration laws, the creditor's equity is, at most, only equal to the equity of the third person, in which case the fundamental rule is, *Qui prior est in tempore potior est in jure.* The doubt in the authorities is, how far chancery will interfere to assert the prior equity against the legal title acquired under the junior equity *with notice.* 2 Ld. Cas. in Eq. 94; American notes to *Basset* v. *Nosworthy.* In the case before us, the legal title has not yet been acquired by the demurrants. The complainants have the prior "equitable lien," with "notice to all persons" by the declaration of the lien in the decree of the Supreme Court. The demurrants have the junior equity acquired by the bill, decree, and sale of this court, the sale not having been confirmed,

nor, of course, any title vested. The superior equity is still with the complainants, except to the extent of the costs incurred by the demurrants before the filing of complainants' bill.