115   467
119   243

MINNIE KEEHN v. FRED KEEHN, E. KEEHN AND LIZZIE KEEHN, Appellees.  JOHN M. HEMINGWAY AND H. C. LIGGETT, Interveners, Appellants.

**Attorney's Lien:** NONE ON REAL PROPERTY IN SUIT. Plaintiff brought action for divorce and for alimony, and to set aside an alleged fraudulent conveyance of land executed by herself and husband to his co-defendants. The husband suffered a default,

and before the motion for temporary alimony was submitted the plaintiff filed a written dismissal of her case. Her attorneys intervened, claiming a lien on the land for the value of their services. *Held*, that Code, section 321, relating to attorneys' liens, and making no provision for liens on real estate, stood in lieu of the common law, and interveners were not entitled to a lien.

Fraudulent Conveyances: SUBSEQUENT CREDITORS. Allegations by the interveners that they had a claim against the husband and wife, who were non-residents, and that the conveyance was fraudulent, and that interveners were entitled to have the lands subjected to the payment of their claims reduced the petition of interveners to a creditor's bill, which was not maintainable, because the interveners were subsequent creditors, and it did not appear that the conveyance was made to defraud them.

Interventions: DISMISSAL OF MAIN SUIT: *Fraudulent dismissal.* As the plaintiff had dismissed her action or filed a dismissal before the petition of intervention was filed, and the property was no longer in litigation between herself and husband, the petition of intervention was not maintainable, though interveners claimed the dismissal of the action was fraudulent as to them.

*Appeal from Franklin District Court.*—HON. J. R. WHITAKER, Judge.

THURSDAY, JANUARY 30, 1902.

ORIGINALLY this was an action for divorce, brought by plaintiff against her husband, Fred Keehn. Combined with it was an action to set aside a sale of real estate made by defendant Fred Keehn, in which his wife joined, to his co-defendants Minnie and Lizzie Keehn. This conveyance was claimed to be in fraud of plaintiff, and she asked that it be set aside, and that she be awarded alimony in the sum of $10,000. Service of original notice was made in the state of Kansas, on all the defendants. Fred Keehn failed to appear, and default was entered against him. The other defendants filed an answer and cross bill, in which they practically denied all the allegations of the petition, asserted that they were the owners in good faith

of the land conveyed to them, and asked that their title thereto be quieted, and plaintiff estopped from claiming any interest therein. After default was entered against the main defendant, plaintiff, through her attorneys, filed a motion for the allowance of temporary alimony with which to pay her counsel. A few days after the default was taken, and before the evidence was offered, or a decree rendered, and before the motion for temporary alimony was submitted, plaintiff made and filed with the clerk a written dismissal of her case. This was on the sixteenth day of November, 1899. Nothing further was done in the case until January 20, 1900, when plaintiff's attorneys, the interveners in this case, filed their petition of intervention with interrogatories attached. Thereafter Minnie and Lizzie Keehn filed a motion to strike this petition. The motion was sustained, and a decree thereafter entered on the cross bill hitherto mentioned. Interveners appeal.—*Affirmed.*

*John M. Hemingway* and *H. C. Liggett* for appellants.

*Taylor & Evans* for appellee.

DEEMER, J.—Interveners served no notice of their petition on any of the parties, but defendants Minnie and Lizzie Keehn appeared thereto, and no notice to them was required. The petition, as will be observed, was filed more than two months after plaintiff had filed her voluntary dismissal. No allowance of temporary alimony was ever made, and the motion therefor does not appear to have been submitted. It is charged in the petition of intervention that interveners were employed by plaintiff to prosecute her action for divorce; that she represented she had good grounds for divorce; that they expended much time and effort in securing evidence, preparing pleadings, and getting the case

ready for trial; that they prepared the motion for temporary alimony; that they took default against the main defendant, and delayed proving up at the request of the other defendants; that plaintiff and her husband are justly indebted to them in the sum of $1,000; that Minnie and Lizzie Keehn made a settlement with plaintiff, and conspired and confederated together to cheat interveners out of all compensation for their services, and in pursuance thereof took plaintiff to Kansas, and out of the reach of process; that the conveyance from the husband to his co-defendants was fraudulent as stated in the original petition, and that neither Fred nor Minnie Keehn have any property in the state out of which interveners' claim may be made, except the real estate in controversy. They therefore asked that their claim be established against husband and wife in the sum of $1,000; that the conveyance from Fred Keehn to Minnie and Lizzie Keehn be set aside; that special execution issue for the sale of the premises. The motion to strike was bottomed on several grounds, among them the following: "(1) That the main action was disposed of when interveners filed their petition; (2) that it was filed without right or legal authority; (3) that the court has no jurisdiction over plaintiff or defendant Fred Keehn; and (4) that interveners have no legal standing whatever in the case."

Code, section 3594, relating to intervention, reads as follows: "Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against both may become a party to an action between other persons either by joining the plaintiff in claiming what is sought by the petition or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adverse to both the plaintiff and defendant either before or after issue has been joined in the cause and before the trial commences." Section 3595

provides that the intervention shall be determined at
the same time the main action is decided, and that inter-
venor shall have no right to delay; and section 3596 that
the intervention shall be by petition, etc. The procedure
adopted in this case is novel, to say the least. Interveners
are in a sense joining with plaintiff in claiming what is
sought in the petition. But it must be remembered that
this is a divorce proceeding, which is purely personal to
the plaintiff. Alimony was sought in that proceeding, but
simply as an incident to the main suit. Even if alimony
or separate maintenance had been the sole relief sought,
interveners could not join with plaintiff in obtaining it,
for she had the undoubted right of dismissal or of waiver
at any time she saw fit. Manifestly, interveners are not
joining with defendants in resisting a claim made by plain-
tiff. They seem, however, to be asking for something
adversely to both plaintiff and defendant. That something
is attorney's fees for bringing the main suit. In their argu-
ment they say they obtained a lien on the property of the
main defendant, and that he and his co-defendants are seek-
ing to defraud them out of their fees. · The exact conten-
tion is that they had an attorney's lien upon the land
referred to in the petition, which could not be defeated by
a compromise and settlement between the parties. Let us
see, then, if they had such a lien. In _Ward v. Sherbondy,_
96 Iowa, 481, and _Jennings v. Bacon,_ 84 Iowa, 406, we
expressly held that our statute with reference to attorney's
liens stands in lieu of the common law lien, and that to ob-
tain such a lien the statute must be strictly followed. Even
at common law an attorney had no lien on real estate
although land was the subject matter of litigation. _Mc-
Collough v. Flournoy,_ 69 Ala. 189; _Hanger v. Fowler,_ 20
Ark. 667; _Rowe v. Fogle,_ 88 Ky. 105 (10 S. W. Rep. 426,
2 L. R. A. 708); _Martin v. Harrington,_ 57 Miss. 208;
_Stewart v. Flowers,_ 44 Miss. 513; Id., 7 Am. Rep. 707
(where the authorities are extensively reviewed). _Smalley_

*v. Clark*, 22 Vt. 598; *Fowler v. Lewis' Adm'r*, 36 W. Va.
112 (14 S. E. Rep. 447. Tennessee stands alone in opposi-
tion to this well nigh universal rule. *Hunt v. McClanahan*,
1 Heisk. 503. But even there it is said that the attorney
has no lien until the real estate is sold and the sale con-
firmed for his client's benefit. *Perkins v. Perkins*, 9 Heisk.
97. Our statute makes no provision for a lien on real
estate in favor of the attorney. See Code, section 321.
And we have expressly held that an attorney has no lien on
real estate to which he has perfected title for his client.
*Cowen v. Boone*, 48 Iowa, 350; *Gas Co. v. West*, 50 Iowa,
16. Even if he had such a lien, it would be what is known as
a "charging lien" at common law, and notice in writing to
the adverse party or his attorney, stating the amount
claimed, and for what service, would be necessary to the
creation thereof. We do not think interveners had
a lien for their services on the land in controversy.
But interveners say they have a claim against Fred
Keehn and wife, that they are non-residents, that the con-
veyance of the property to Minnie and Lizzie Keehn was
fraudulent, and that they are entitled to have the lands
subjected to the payment of their claims. This reduces
their petition of intervention to a simple creditors' bill, in
which they seek to establish a claim for services against
husband and wife, and to subject the real estate, title to
which was in Minnie and Lizzie Keehn, to the payment
of their claim. There are several reasons why this may not be
done: First. It clearly appears that they, if creditors at all,
are subsequent creditors of Fred Keehn, and it does not
appear that the conveyance was made for the purpose of
defrauding them. Hence they are not in position to
attack it. *Brundage v. Cheneworth*, 101 Iowa, 256.
Second. At the time the petition was filed plain-
tiff had dismissed her action, or at least filed a dismissal,
and the property was no longer in litigation between plain-
tiff and her husband. The court had lost jurisdiction of

the *rem*, and intervenors, as we have seen, had no lien thereon. . They did not cause an attachment to be issued, and the case is not brought within the exceptions recognized in *Corn Exchange Bank v. Applegate,* 91 Iowa, 411, and *Taylor v. Brownscombe,* 74 Iowa, 534.    Nor have they exhausted their remedies at law.    *Wiltse v. Flack,* 115 Iowa, 51; *Peterson v. Gillings,* 107 Iowa, 306.

But, aside from this, the claim made by intervenors is not only that the conveyance from Fred Keehn to Minnie and Lizzie was fraudulent as to plaintiff, and also incidentally as to them, but that the settlement of the case was also fraudulent as to them, and as to them alone. This appears to be their main contention. Plaintiff does not join in this claim, and they are in no position to ask to be joined with her. They are mere interlopers, and are not entitled to be heard. *Gas Co. v. West, supra.* They had no such interest in the subject matter of the litigation, or in the success of either of the parties or against both, as entitled them to come into the case. Moreover, there was in reality no action pending when they filed their petitions. Plaintiff's dismissal had been on file for more than two months, and nothing remained to be done but to enter the formal order of dismissal. Under this state of facts they had no right to intervene, for their intervention would have delayed the disposition of the case. *Dupont & Co. v. Amos,* 97 Iowa, 484; *Teachout v. Railway Co.,* 75 Iowa, 728. The motion for temporary alimony was disposed of by plaintiff's voluntary dismissal of the main action. While we have adopted extremely liberal rules regarding intervention, we have never gone to the extent of allowing claims for alimony in a divorce proceeding which has been voluntarily dismissed by the plaintiff. On the face of the papers interveners do not seem to have any valid claim against the defendant Fred Keehn. *Sherwin v. Maben,* 78 Iowa, 467.

The ruling of the trial court was clearly correct, and it is AFFIRMED.

WEAVER, J., taking no part.