ASHMAN *v.* SCHECTER ET AL.

[No. 2, October Term, 1950.]

*Decided November 1, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Louis S. Ashman,* with whom were *Ashman & Link* on the brief, for appellant.

*Harold Lewis* and *Reuben Shiling* for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Louis S. Ashman, a member of the Baltimore bar, brought this suit under the Uniform Declaratory Judgments Act, Code Supp. 1947, art. 31A, § 1 et seq., to

obtain a declaratory decree and an injunction in order to protect an alleged attorney's lien for legal services rendered for a former client, Mrs. Sally Shecter.

The original bill of complaint, filed in the Circuit Court No. 2 of Baltimore City on June 1, 1948, alleged that Mrs. Shecter engaged complainant in 1945 to represent her in her domestic disputes with her husband, Solomon K. Shecter, and that she agreed to pay him a minimum fee of $500. She promised that if the Court should not require her husband to pay at least that amount for complainant's services, she would pay the difference, and as a guarantee of payment she induced her mother, Mrs. Shirley Simon, to deposit the sum of $500 with him.

The bill alleged that complainant obtained a decree of partial divorce for Mrs. Shecter on January 22, 1946. The decree ordered her husband to pay alimony and support for the two children, and to pay complainant and Harry Singerman, her attorneys, a fee of $500. During the trial the Court cited Mrs. Shecter and her mother for contempt for assaulting Schecter's sister in the courtroom, and complainant defended them against that charge. He also appeared as their attorney in a suit for damages entered against them by Shecter's sister. After he won the divorce case for Mrs. Shecter, he filed various papers in Court to enforce her rights under the decree against her husband. When the husband's desertion continued more than eighteen months, Mrs. Shecter requested complainant to apply for an absolute divorce for her. The bill further alleged that she requested him to try to secure an agreement that Shecter would convey to her his interest in their home at 5807 Park Heights Avenue for a reasonable sum of money, and that she promised that upon acquisition of full title to the property, she would mortgage it and pay complainant's counsel fees. On March 11, 1948, complainant succeeded in getting the parties to sign such an agreement. The agreement provided that Shecter would relinquish his interest in the home if Mrs. Shecter would pay him $2,500. It further provided that Shecter would

pay $500 out of the $2,500 to cover the costs of the divorce proceedings and a part of the fee allowed by the Court in 1946 to complainant and Mr. Singerman, Mrs. Shecter's attorneys.

The bill further alleged that the title was conveyed to complainant, as Mrs. Shecter's attorney, and Isidor Roman, as attorney for her husband, as a temporary measure to assure compliance with the agreement. The bill stated that it was understood that complainant would not join in reconveying the property to Mrs. Shecter until his fees were fully paid, and if they were unable to agree upon an amount as the fair value of his services, the matter would be submitted to arbitrators. However, after obtaining an absolute divorce for Mrs. Shecter, she denied that she owed him anything, but threatened to enter suit to compel him to join in reconveying the property, while her mother demanded the return of the $500 which she had deposited with him as a guarantee in 1945. Because of these threats complainant entered the instant suit.

On June 9, 1948, eight days after the institution of suit, complainant petitioned for leave to amend his bill by adding Mrs. Simon as codefendant. Harold Lewis, newly retained attorney for Mrs. Shecter, was served with a copy of his petition. On June 12 he filed a reply petition declaring (1) that Mrs. Simon was a non-resident of the State of Maryland, (2) that he was not her attorney of record, and (3) that, inasmuch as complainant was seeking a decree in personam, personal service was required. On June 22 Mrs. Shecter demurred to the bill, and the Court sustained the demurrer.

It is conceded that Mrs. Shecter denied that complainant had any lien on her property, but complainant agreed to join Mr. Roman in reconveying the property to her without waiving his alleged lien. The property was accordingly deeded to her, and in compliance with the agreement she paid the sum of $2,500, and $500 thereof was paid for the costs and part of the counsel fee.

On July 1, 1949, one year and one month after the filing of the original bill, complainant filed an amended bill, which named Mrs. Shecter and Mrs. Simon as defendants. Mr. Lewis was served with a copy of the amended bill, but he explained to the Court that, while he had accepted the service of the amended bill, since he had entered his appearance for Mrs. Shecter, he was not the attorney of record for Mrs. Simon and accordingly refused to accept service on her behalf. On October 14, 1949, the Court ruled that inasmuch as Mrs. Simon had not been summoned, she was not before the Court.

The Court also sustained a demurrer to the amended bill, but again gave complainant leave to amend. On November 12, 1949, complainant filed his second amended bill. In addition to the allegations of the original bill and the first amended bill, the second amended bill alleged that defendants agreed to authorize complainant to pay $150 to Mr. Singerman out of the sum of $500 delivered to complainant; and that after paying him that sum and the costs of suit, and allowing for the further sum of $100 claimed by Mr. Singerman under the Court's decree, only about $75 remained for complainant, and this is all he has ever received for his services. The bill alleged that Mr. Lewis accepted service on behalf of both defendants, and afterwards refused to accept service on behalf of Mrs. Simon. The bill further alleged that Mrs. Shecter is planning to dispose of her property on Park Heights Avenue "as soon as it is freed from the possible lien or other legal restraint," and this is her only property in Maryland of sufficient value to satisfy a judgment in favor of complainant for the value of his services.

The bill prays the Court: (1) to construe the guarantee agreement between complainant and Mrs. Simon, and after determining the amount defendants are indebted to complainant for his services, to decide whether complainant has the right to set off against Mrs. Simon's $500 deposit the amount due for his services; (2) to pass upon Mr. Singerman's claim for an additional fee of

$100; and (3) to pass upon complainant's claim to a lien upon the real property and restrain Mrs. Shecter from conveying or encumbering the property unless she files a bond to guarantee payment of any judgment that may be rendered against her.

Mrs. Shecter again demurred, and the Court sustained her demurrer without leave to amend. From that decree, which in effect dismisses the suit, complainant brought this appeal.

It cannot be controverted that, since Mrs. Simon has not been summoned in this case and Mr. Lewis has refused to accept service of process on her behalf, she has not been brought into Court. Furthermore, it is conceded that Mr. Singerman has not been made a party to the case or summoned. The Court cannot adjudicate complainant's claim to an additional counsel fee, even if equity had jurisdiction. Consequently the only question that remains for decision is whether the allegations are sufficient to warrant the intervention of equity to give complainant relief against Mrs. Shecter.

Under the Uniform Declaratory Judgments Act, any person interested under a deed or written contract may have determined any question of construction or validity arising under the instrument, and obtain a declaration of rights, status or other legal relations thereunder. Code Supp. 1947, art. 31A, § 2. But since Mrs. Simon is not summoned in this case, the Court cannot construe the guarantee agreement. Thus the ultimate question with which we are confronted is whether complainant can assert any right to an attorney's lien on the real property owned by Mrs. Shecter.

At common law attorney's liens are of two kinds. One is a retaining lien on all papers, securities and money belonging to his client which come into his possession in the course of his professional employment. This is a general lien which gives him the right to retain such things until all his charges against his client are paid. As the name implies, it is dependent upon possession. It is, generally speaking, a passive lien and cannot be

actively enforced either at law or in equity. *Robinson v. Rogers,* 237 N. Y. 467, 143 N. E. 647, 33 A. L. R. 1291; *Reynolds v. Warner,* 128 Neb. 304, 258 N. W. 462, 97 A. L. R. 1128. The other lien is a charging lien, which binds a judgment recovered through the attorney's efforts. This lien, which was confined at common law in England to the taxed costs, was not patterned after any doctrine formulated in other cases, but was based upon the broad principle of justice that an attorney, as a recognized officer of the court, should be paid his fees and expenses out of any judgment obtained as the result of his labor and skill. It was a means invented by the courts to protect attorneys from being cheated by their clients by preventing the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.

In New York prior to 1848, an attorney was entitled to a lien upon a judgment recovered by him, but the amount of his lien was limited to his taxable costs. By the Code of Procedure of 1848, the statutes regulating the costs of fees of attorneys in civil actions were repealed, and the compensation of the attorney was left to be determined by the contract of the parties. The implied equitable lien was consequently extended to cover the attorney's compensation, whatever the amount, in all cases where judgment was obtained. To the extent of his compensation the attorney was deemed an equitable assignee of the judgment, and had a lien upon it when recovered. *Coughlin v. New York Central & Hudson River R. Co.,* 71 N. Y. 443, 27 Am. Rep. 75, 77; 1 Jones on Liens, 3d Ed., sec. 184.

The scope of the charging lien was explained by Judge Cardozo in the New York Court of Appeals in the following language: "The very reason for its existence was to save the attorney's rights where he had been unable to get possession. * * *A clandestine or collusive payment, after notice, actual or constructive, of the lien, did not discharge the debtor. * * * But the reason for the existence of this lien suggests the limitation of its scope. It

was not a lien for a general balance of account. It was a lien for the value of the services rendered in that very action. * * * If the attorney got possession of the fund, he had a general lien. If he did not get possession, his lien was for the services that brought the fund into existence." In re Teinsheimer, 214 N. Y. 361, 108 N. E. 636, 637.

In this country there has been a conflict of opinion as to the scope or existence of the charging lien. In Connecticut it has been held that the attorney's lien upon a judgment embraces the taxable costs, and also counsel fees for services rendered in obtaining the judgment, even where there has been no agreement as to the amount he is entitled to charge for his services and the compensation is to be determined upon the principle of *quantum meruit*. *Andrews v. Morse*, 12 Conn. 444, 31 Am. Dec. 752. In most States, however, it has been held that an attorney has no lien for his counsel fees upon a judgment recovered by him. The conflict probably arose from a misunderstanding of the English system of charging costs. In England the services of barristers were theoretically gratuitous and their fees were honorariums, while the fees of attorneys and solicitors were taxed as a part of the costs and were legally collectible. In referring to this difference in the methods of charging costs, the Supreme Court of Missouri said: "Attorneys and counsellors at law in Missouri are not to be confounded with the mere attorney and solicitor in England. These last are recognized officers of the court, and are entitled to fees for the services performed by them in the same manner as the clerks of our courts of record. Their fees are ascertained and fixed by rules of court, and are recognized in the taxation of the costs of a suit. Such being their foundation, the law confers a lien on papers and on judgments to secure their payment, and will not suffer collusive compromises between the parties to a suit, made with a view to prevent their recovery. Attorneys at law, in our courts, are allowed no fees which are taxed as costs. They look to contracts made

with their clients for remuneration for their services."
*Frissell & Johnson v. Haile*, 18 Mo. 18, 20, 21.

In Maryland an attorney who has obtained a judgment for his client has no lien for an attorney's fee on the judgment which has not been reduced into possession by actual collection, but his claim other than for the taxed costs must be asserted like a claim arising upon any other contract. *Marshall v. Cooper*, 43 Md. 46, 62; 2 Poe, Pleading and Practice, 5th Ed., sec. 54. The charging lien, as distinguished from the retaining lien, has never been recognized in Maryland.

It is held almost universally at common law that an attorney who has been employed by a client to prosecute a suit to secure the title to real property, and who wins a decree therefor, has no lien upon the property for his counsel fees. While there are a few contrary decisions, such as *Scott v. Kirtley*, 1933, 113 Fla. 637, 152 So. 721, 93 A. L. R. 661, we agree with the overwhelming majority of the decisions that to hold that an attorney has a lien upon real property recovered in an equity suit for his counsel fees would be an unwarranted and dangerous extension of the attorney's lien. *Smalley v. Clark*, 22 Vt. 598, 606; *People v. Holton*, 222 Ill. App. 427; *People ex rel. Stephens v. Holten* 304 Ill. 394, 136 N. E. 738, 24 A. L. R. 929; *Keehn v. Keehn*, 115 Iowa 467, 88 N. W. 957; *Hanger v. Fowler*, 20 Ark. 667, 676; *Holmes v. Waymire*, 73 Kan. 104, 84 P. 558; *Fillmore v. Wells*, 10 Colo. 228, 15 P. 343, 3 Am. St. Rep. 567. As we have said, attorney's fees are not taxable as costs, and so if an attorney's lien were allowed on real property, a *bona fide* purchaser of the property or judgment creditors might suffer grievous loss. This objection was recognized in *Humphrey v. Browning*, 46 Ill. 476, 95 Am. Dec. 446, 454, where the Supreme Court of Illinois emphasized that the policy of the law does not encourage secret liens and if liens were allowed for the professional services of lawyers, no one could foresee the difficulties and confusion that would result; as every tract of land which had been the subject of litigation would lose most of its exchange-

able value from an apprehension of some latent lien in favor of some attorney.

In the case before us it is even plainer than in the cases we have cited that the attorney has no lien on the real property, because here he did not even acquire the property as the result of a suit to acquire the title. The property was conveyed to complainant and Mr. Roman, the opposing counsel, not for the benefit of counsel but in trust for their respective clients, with the understanding that the two attorneys would reconvey the property to Mrs. Shecter as soon as the agreement could be carried out.

It is entirely possible that complainant's services may have been meritorious, that he may still be entitled to substantial counsel fees, and that he may have been deceived by his client. Nevertheless, his second amended bill does not contain allegations sufficient to show that he is entitled to an attorney's lien on the property. As the bill fails to show that he is entitled to any relief in equity, the decree must be affirmed.

*Decree affirmed, with costs.*