The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Clarold E. ROGERS, Respondent.

No. 67180.

Supreme Court of Iowa.

Dec. 23, 1981.

Lee H. Gaudineer, Jr., Karen E. Shaff, and Hedo M. Zacherle, Des Moines, for complainant.

James A. Pratt, of Heithoff, Pratt & Heithoff, Council Bluffs, for respondent.

LARSON, Justice.

In this lawyer disciplinary proceeding we review the report of the Grievance Commission, Iowa S.Ct. R. 118.9, recommending that Clarold E. Rogers be severely reprimanded for ethical violations arising from his neglect in disposing of ten estates and two conservatorships, contrary to DR 6–101(A)(3), Iowa Code of Professional Responsibility for Lawyers.

Our review of this proceeding is de novo; the Commission's findings or recommendations are not binding but we accord them respectful consideration. *Committee on Professional Ethics v. Rabe*, 284 N.W.2d 234, 235 (Iowa 1979).

In its findings of fact the Commission noted that between 1974 and 1977 Rogers had opened ten different estates, but had not diligently sought to close them. For example, two estates were opened in October, 1974; however, nothing was filed in either estate until November, 1979, when the inventories were filed. Similarly, another estate was opened in July, 1976, and Rogers was appointed its attorney the following March; at the time of the Commission's hearing, however, nothing had been filed in the estate since April, 1977. In a fourth instance, an estate was opened in 1975, and Rogers was appointed executor; however, no filings were made in the matter after January, 1978, despite Rogers' assurances in July, 1980 that the estate would be closed within sixty days. Rogers acknowledges that in this last case the estate was not brought to conclusion by due diligence.

The Commission also found that Rogers had neglected two conservatorships, which had been opened in July and September, 1975. Nothing had been filed in either matter until the Committee had lodged its complaint against Rogers in April, 1981.

In addition, the Commission observed that Rogers had been unresponsive to the

Committee's requests and to the clerk's notices of delinquencies posted to him pursuant to section 633.32, The Code 1973, 1975, 1977, 1979 and Iowa S.Ct. Probate R. 5. Two letters had been posted to Rogers in September, 1980, in which the Committee requested first, that he respond to its previous letter advising him of complaints from a party with an interest in an estate, and second, that he get certain estates "in closing condition" and file a report on the status of each one within sixty days. Rogers did not respond to either letter from the Committee.

I. *Violation of Canon 6* ("A Lawyer Should Represent a Client Competently"). DR 6–101(A)(3) provides that a lawyer shall not "[n]eglect a matter entrusted to him." Although "neglect" is not defined in Canon 6, EC 6–4 provides some insight into its definition by noting a lawyer's obligation to his client "requires him to prepare adequately for and give appropriate attention to his legal work." Each case of neglect turns on the particular facts, *Committee on Professional Ethics v. Bitter*, 279 N.W.2d 521, 524 (Iowa 1979), although a violation of DR 6–101(A)(3) generally involves

> indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client. The concept of ordinary negligence is different. Neglect usually involves more than a single act or omission. Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith.

ABA Comm. on Professional Ethics, Informal Opinions, No. 1273 (1973).

In *Bitter*, 279 N.W.2d at 524–25, this court determined that a lawyer's accumulation of a large number (twenty-six) of delinquent probate matters, the length of the delinquencies in some of them, and his failure to satisfactorily respond to judicial notices of delinquency, constituted "neglect" within the meaning of DR 6–101(A)(3). We concluded:

> Every practicing attorney must make judgments as to priority of matters in progress in his office, all of which are clamoring for attention, and many clients must feel their legal business has been neglected in the process. The rule, however, does not proscribe mere delay—it must amount to "neglect." *Application of the rule should require a lawyer to complete legal matters entrusted to him in a reasonably timely manner.* If necessary, he should decline additional legal matters if accepting them would result in neglecting pending matters, seek assistance, or disengage himself from these lingering matters and allow another lawyer to complete them. *Reasonable adherence to the rule should also involve positive response to the prodding of the district court and its personnel.*

*Id.* at 525 (emphasis added). *See generally Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977); D. Meiselman, *Attorney Malpractice Law & Procedure* § 10.20, at 186–89 (1980); 7 Am.Jur.2d *Attorneys at Law* § 120, at 189–90 (1980); 7A C.J.S. *Attorney & Client* § 254, at 458 (1980); Annot., *Attorney—Negligence—Discipline*, 96 A.L. R.2d 823, 833–35 (1964).

Among the probate statutes with which Rogers failed to comply were section 633.-361 (personal representative's report and inventory, due sixty days after qualification), section 633.473 (final settlement of estate, to be made in three years), section 633.642 (conservatorship inventory, to be filed within 60 days after appointment), and section 633.670 (conservator's annual report and accounting), The Code 1973, 1975, 1977, 1979, 1981. Rogers has admitted neglect in the disposition of one estate; we agree with the Commission's conclusions that he also neglected his duties in violation of DR 6–101(A)(3) in the remaining probate matters. *See generally Bitter*, 279 N.W.2d at 524–25; *Committee on Professional Ethics v. Griffiths*, 262 N.W.2d 264, 264 (Iowa 1978) (dilatory response to title objection); *Committee on Professional Ethics v. Wilson*, 235 N.W.2d 117, 118 (Iowa 1977) (neglect of litigation matters). *See also Committee on Professional Ethics v. Wright*, 178 N.W.2d

749, 752 (Iowa 1970). Having determined the Committee satisfied its burden in proving Rogers violated DR 6–101(A)(3) by a convincing preponderance of the evidence, *Rabe,* 284 N.W.2d at 235, we must now determine what sanction is appropriate under the circumstances.

■ II. *Disciplinary sanction.* Various sanctions have been employed by courts for a lawyer's neglect of duty, including disbarment, suspension, and reprimand. *See* 7A C.J.S., *supra,* § 118, at 130–31; Annot., *supra,* 96 A.L.R.2d at 833–35. In *Bitter,* 279 N.W.2d at 525, we concluded that the lawyer's neglect of duty, *inter alia,* justified at least a two-month suspension from practice. The form and extent of a disciplinary sanction, however, must be tailored to the specific facts and circumstances of each individual case. *See Rabe,* 284 N.W.2d at 236; 7 Am.Jur.2d, *supra,* §§ 58, 59, at 117–18; 7A C.J.S., *supra,* § 116, at 117–21.

Rogers implies that suspension is not warranted because in *Bitter* the lawyer's conduct was more serious than that involved in the present case. There are, however, two aggravating circumstances which militate in favor of a harsher sanction than the one we imposed in *Bitter.* First, Rogers repeatedly failed to acknowledge the seriousness of his conduct, even after the delinquent probate matters had been brought to his attention by parties to the proceedings as well as the Committee. While it is commendable that he has attempted to remedy matters since the filing of the Committee's complaint, the critical fact remains that they were delinquent in the first instance. Rogers was not inclined to cooperate with the requests of the parties or the Committee[1] until after formal disciplinary proceedings had been commenced. Second, Rogers promised parties to the proceedings and the Committee, in more than one instance, that certain probate matters would not be unduly prolonged. These promises went unfulfilled, and while we do not imply such representations were deceitful, we deem the breach of them to be significant.

■ We have often stated that attorney disciplinary proceedings are not designed to punish, but rather to determine the fitness of an officer of court to continue in that capacity, to insulate the courts and the public from those persons unfit to practice law, to protect the integrity of and the public confidence in our system of justice, and to deter other lawyers from engaging in similar acts or practices. *E.g., Rabe,* 284 N.W.2d at 236; *In re Frerichs,* 238 N.W.2d 764, 767 (Iowa 1979); *see* 7 Am.Jur.2d, *supra,* § 26, at 80–81; 7A C.J.S., *supra,* § 89, at 21–25.

■ We conclude that Rogers' license to practice law should be suspended indefinitely, with no possibility of reinstatement for four months. This suspension shall apply to all facets of the practice of law. Iowa S.Ct.R. 118.12. Upon application for reinstatement, Rogers shall prove he has performed no legal services during the suspension. His application for reinstatement, if any, shall follow Iowa S.Ct.R. 118.13.

LICENSE SUSPENDED.

---

1. As the Commission's report aptly stated:

   [We are] particularly disturbed by the attitude which [Rogers] adopted with respect to the complaints, inquiries, and requests for reports which he received from the Committee on Professional Ethics and Conduct, and his refusal to respond to them.

   Lawyers should be aware that this Committee's function is an integral part of the Supreme Court's machinery for handling complaints regarding the ethics and conduct of attorneys admitted to practice before the Court, and attention should be given to their requests and requirements.

   *See generally* 7 Am.Jur.2d, *supra,* § 58, at 117.