**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Deborah K. McKITTRICK, Respondent.**

No. 03–2094.

Supreme Court of Iowa.

June 16, 2004.

Norman G. Bastemeyer and David Grace, Des Moines, for complainant.

Nicholas Critelli, Jr., of Law Chambers of Nicholas Critelli, P.C., Des Moines, for respondent.

CADY, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct charged Deborah K. McKittrick with several violations of the Iowa Code of Professional Responsibility for Lawyers based on her conduct in representing a client in a dissolution action

and her subsequent conduct in collecting fees for her services from the client. The Grievance Commission of the Supreme Court of Iowa found McKittrick violated the Code of Professional Responsibility. It recommended McKittrick receive a public reprimand. On our review, we find McKittrick violated the Code and impose an indefinite suspension of not less than three months.

## I. Background Facts and Proceedings.

Deborah K. McKittrick is a lawyer in Ankeny, Iowa. She was admitted to the practice of law in 1989. She primarily practices in the area of family law, and also works as a mediator. She is a former member of the Family Law Committee of the Iowa State Bar Association and served as a member of a division of the Grievance Commission.

In July 1995, McKittrick agreed to represent Mary Jo Walker in a domestic abuse proceeding and a subsequent dissolution action. A written attorney fee contract was executed, providing for compensation based on an hourly fee, billed on a monthly basis. Among other provisions, the contract imposed a service charge of "1.5% per month on all unpaid balances."

The paramount dispute in the dissolution action concerned the designation of the primary caretaker of the parties' daughter. Following a temporary custody hearing, Walker was awarded temporary primary care of the child. A trial was then set for March 26, 1996.

In September 1995, opposing counsel sent written interrogatories to McKittrick. McKittrick forwarded the interrogatories to Walker for her to answer, but did not inform her of a deadline to respond. On December 27, 1995, opposing counsel filed a motion to compel answers to the inter-

rogatories, after he had written McKittrick on December 1, requesting the answers be served. The district court ordered the answers to be served within thirty days.

McKittrick served the answers to the interrogatories on January 31, 1996. Opposing counsel claimed some of the answers to questions requesting information about the witnesses Walker intended to call at trial were incomplete. After the two lawyers were unable to resolve the dispute, opposing counsel filed a motion for sanctions.

On March 12, the district court ordered that McKittrick serve complete answers to the disputed interrogatories within seven days. The court also informed the attorneys that sanctions would be considered immediately prior to trial.

McKittrick transmitted a witness list to opposing counsel by fax on March 18 but did not serve answers to the disputed interrogatories as ordered by the district court. On March 20, opposing counsel filed a motion to exclude witnesses and exhibits at trial.

On March 26, prior to the commencement of the trial, the district court considered sanctions and ordered most of Walker's witnesses excluded for the failure to comply with the order of March 12. The case then proceeded to trial. McKittrick did not call any witnesses other than Walker. In the dissolution decree that followed, the district court designated Walker's husband as the primary caretaker of the parties' daughter.

Walker discharged McKittrick after the decree was entered and employed another attorney, who unsuccessfully sought to overturn the decree by post-trial motions and, eventually, an appeal. McKittrick promptly transferred the client file to Walker's new attorney. McKittrick also waived her fee for services she performed after January 30, 1996. The unpaid amount of the fee prior to this date was $3,610.72. Walker declined to pay the bill.

McKittrick took no action to collect the bill until July 13, 1998, when she filed a notice of attorney lien. By this time, the accumulating interest on the unpaid bill, as computed by McKittrick, had increased the amount due to $6,304.04. McKittrick charged compound interest and at times during the course of the representation, charged interest on services performed before Walker was obligated to pay for the services. McKittrick filed the lien against real estate awarded to Walker in the dissolution action. She pursued no further action to collect the fee and did not notify Walker of her actions.

Walker learned of the attorney lien against her real estate in 1999, after she sought to refinance the mortgage on the property. Walker had filed a modification action in an effort to obtain custody of her daughter and sought to refinance to obtain funds to pay the required retainer of her new attorney. Walker then contacted McKittrick, who agreed to release the lien if Walker paid her $2000 from the refinancing proceeds, and further paid her $50 a month until the remaining debt was paid. Walker agreed to the arrangement and further agreed to sign a written confession of judgment permitting McKittrick to file the judgment in the event she failed to make a monthly payment. The agreement provided that the monthly payments were to be paid on the tenth day of each month, starting July 10, 1999.

Walker made the first payment in early July as agreed and then received an invoice from McKittrick indicating payment was due July 23. Walker believed this meant the $50 payments were not due until the twenty-third of each month and waited until August 16 to make the next monthly payment. However, McKittrick

filed the confession of judgment on August 11 after she did not receive the August payment by August 10. McKittrick did not contact Walker before taking this action. McKittrick later obtained a general execution and began garnishing Walker's wages.

Walker ultimately succeeded in obtaining primary care of her daughter in the modification action. However, the accumulating financial burdens, including the wage garnishment, forced Walker to file for bankruptcy shortly after that time. Walker discharged the remainder of the debt to McKittrick in the bankruptcy action.

McKittrick testified at the commission hearing that she was responsible for the imposition of the discovery sanctions in the dissolution action, but explained that the underlying failure to timely provide the discovery was largely attributable to problems with her office staff and the lack of cooperation by Walker. She also pointed out that her conduct did not harm the client because the district judge who entered the dissolution decree indicated in the decree that the custody award was not influenced by the exclusion of witnesses. McKittrick also testified that the attorney fee contract she used, providing for the 1.5% monthly interest, was virtually identical to the form attorney fee contract contained in the 1999 family law manual published by the Iowa State Bar Association.

McKittrick has been privately admonished on four occasions in the past for ethical violations. In 1993, she was admonished for requiring a client to pay a fee in a dissolution action before requesting the court to enter a stipulated decree. In 1994, she was admonished for representing a client in a dissolution action when the opposing counsel was an attorney with whom she shared office space. In 1999, she was admonished for billing a person for services she performed when the person had not retained her services. Finally, in 2000, McKittrick was admonished for securing signatures on blank verification forms.

## II. Board Complaint.

The Board charged McKittrick with multiple violations of the Code of Professional Responsibility. It claimed McKittrick's conduct resulting in the discovery sanctions violated Code of Professional Responsibility DR 6–101(A)(3) (neglect of a client's legal matter), DR 1–102(A)(5) (conduct "prejudicial to the administration of justice"), and DR 1–102(A)(6) (conduct that "adversely reflects on the fitness to practice law"). It claimed McKittrick failed to supervise employees in violation of DR 3–104(D). It further claimed McKittrick charged an illegal interest rate on the unpaid balance of her fees and compounded interest in violation of DR 2–106(A) (a lawyer shall not charge or collect an illegal fee) and DR 1–102(A)(6). It further claimed the attorney lien violated DR 5–103(A) ("A lawyer shall not acquire a proprietary interest in the ... subject matter of litigation being conducted for a client .... "), DR 7–102(A)(2) (advancing an unwarranted claim), and DR 1–102(A)(5) and (6). Finally, it claimed McKittrick's conduct in filing a confession of judgment and garnishing Walker's wages violated DR 2–106(A), DR 7–101(A)(3) (intentional prejudice to client), and DR 1–102(A)(5) and (6).

The commission found the Board established the violations as set forth in the complaint. It recommended McKittrick receive a public reprimand.

## III. Scope of Review.

█ We review attorney disciplinary matters de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard,* 653

N.W.2d 373, 375 (Iowa 2002). Although we give weight to the findings of the commission, they do not bind us. *Id.*

## IV. Violations.

The violations alleged by the Board essentially cover McKittrick's conduct in representing a client and her subsequent conduct in collecting her attorney fee from the client. We will address the conduct separately.

### A. Neglect.

 In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Moorman*, 683 N.W.2d 549 (Iowa 2004), also filed today, we reviewed the distinction between professional malpractice and professional neglect supporting disciplinary action. Conduct amounting to inadvertence or conduct resulting from a good-faith error in judgment does not constitute neglect warranting discipline. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams*, 623 N.W.2d 815, 819 (Iowa 2001). Instead, neglect normally involves indifference and a consistent failure to advance client interests when action is required. *Moorman*, 683 N.W.2d at 551–52. It can result from extreme inaction amounting to abandonment of the client or a case of procrastination, usually accompanied by some additional aggravating circumstances. Charles W. Wolfram, *Modern Legal Ethics* § 5.1, at 191–92 (1986) [hereinafter Wolfram]. Neglect generally involves more than one act or omission. *Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 536 (Iowa 1981).

 In this case, McKittrick failed to comply with clear and unequivocal time limitations imposed by a court order for discovery. The court order warned McKittrick that sanctions would be considered, and McKittrick was obligated to act promptly to protect the interests of her client. Notwithstanding, the court directive and admonition failed to prompt McKittrick to timely perform her responsibility, just as the previous court order, discussions and correspondence with opposing counsel, and the rules of procedure failed to compel McKittrick to comply with the discovery mandates during the preceding months. This type of conduct extended beyond negligence and rose to the level of neglect, in violation of DR 6–101(3). It also adversely reflected on McKittrick's fitness to practice. *See* Iowa Code of Prof'l Responsibility DR 1–102(A)(6). McKittrick further failed to supervise employees and oversee employee work that contributed to the neglect. *See id.* DR 3–104(D).

### B. Collection of Fees.

Attorneys should avoid fee disputes with clients as much as possible because the collection of fees by attorneys from clients can give rise to a host of problems and pitfalls. *See* Wolfram, § 9.6.1, at 553–54. Attorneys should aspire to resolve fee disputes amicably, and sue clients only when necessary "to prevent fraud or gross imposition by the client." Iowa Code of Prof'l Responsibility EC 2–25; *Heninger & Heninger, P.C. v. Davenport Bank & Trust Co.*, 341 N.W.2d 43, 51 (Iowa 1983).

While it is not unethical for a lawyer to engage in fee collection practices against a former client, the practices employed to enforce collection should be carefully scrutinized. *See generally* Debra T. Landis, Annotation, *Attorneys at Law: Fee Collection Practices as Ground for Disciplinary Action*, 91 A.L.R.3d 583 (1979) (collecting and discussing cases on attorney fee collection practices). Illegal, aggressive, and improper collection practices can lead to disciplinary actions against attorneys, as can the use of attorney liens and confessions of judgment. *See id.* Additionally,

an attorney who imposes an unlawful finance charge and improperly calculates the amount of interest on a fee can violate the rules of professional ethics. *Fla. Bar v. Fields,* 520 So.2d 272, 272–73 (Fla.1988).

### 1. Finance Charge and Interest.

We first consider the Board's claim that McKittrick violated the Iowa usury statutes. The Board maintains that McKittrick was not permitted to charge interest in excess of the maximum amount set forth in Iowa Code section 535.2(3) (2003), without complying with the notice and disclosure provisions of the state and federal laws governing consumer credit transactions.

Iowa usury law limits the rate of interest that may be charged in a written agreement for the payment of interest to a variable amount based on the rates of government notes and bonds.[1] *Id.* § 535.3(*a*). At the time relevant to this action, the maximum rate of interest was 8.75%. *See* July 19, 1995 Iowa Admin. Bull. at 93.

The usury law, however, does not apply to finance charges on accounts receivable. Under section 535.11, a creditor may impose a finance charge on the unpaid balance of an account receivable, not exceeding certain rates permitted under the consumer credit code, if the creditor gives notice as provided under the statute. Iowa Code § 535.11(1). If the transaction is subject to the Truth in Lending Act (TILA), written notice must be given as required under the Act. *Id.* § 535.11(2)(*a*). If the transaction is not subject to the TILA, notice must be given when the debt arises and must be contained in the invoice or bill of sale. *Id.* § 535.11(2)(*b*). For an open account, this notice must be given when credit is initially extended. *Id.* Notwithstanding, section 535.11 exempts parties who "have agreed" in writing for a different finance charge or rate of interest. *Id.* § 535.11(1).

■ The Board claims McKittrick was not permitted to impose a finance charge in excess of 8.75% because she failed to give notice to Walker as required under the statute. However, the written fee agreement entered into between McKittrick and Walker, providing for a finance charge on accounts receivable, satisfied the statute and made further notice unnecessary. Moreover, although lawyers are not necessarily exempt from the provisions of the consumer credit code and the TILA, the requirements of those provisions did not apply under the circumstances of this case. *See Riethman v. Berry,* 287 F.3d 274, 277–79 (3d Cir.2002) (law firm not subject to the TILA where client had no right to defer payment of the bill); *Ault v. Gen. Prop. Mgmt. Co.,* 683 P.2d 988, 991 (Okla.Ct.App.1984) (Uniform Consumer Credit Code applies to credit sales of legal services by an attorney who regularly extends credit).

■ However, the record supports a finding that McKittrick compounded interest and, at times, imposed interest on charges for services performed before those charges were billed or before they were due. "Compound interest is interest on interest." 47 C.J.S. *Interest & Usury* § 3, at 21 (1982). The accrued interest is added to the principal sum, which is then considered the new principal for the calculation of interest for the next period. *Id.* Compound interest was disfavored at common law as harsh and oppressive be-

---

1. The law otherwise limits interest in other specifically enumerated instances to five percent. *See* Iowa Code § 535.2(1) (2003). It also permits some specific persons to agree in writing to any rate of interest. *Id.* § 535.2(2). These provisions are inapplicable to this case.

cause it has the effect of unduly accelerating the accumulation of debt. *Henderson v. Camden County Mun. Util. Auth.,* 176 N.J. 554, 826 A.2d 615, 619 (2003). Consequently, compound interest is not permitted absent an agreement between the parties. *See Power Equip., Inc. v. Tschiggfrie,* 460 N.W.2d 861, 863 (Iowa 1990). Moreover, our legislature does not permit a finance charge on accounts receivable to be compounded. Iowa Code § 535.11(6). The Board established that McKittrick compounded the finance charge imposed in this case. This resulted in the imposition of an illegal finance charge, in violation of DR 1–102(A)(6).

## 2. Attorney Lien.

■■ Generally, an attorney is permitted to secure a claim for fees by two methods. *See Feaker v. Bulicek,* 538 N.W.2d 662, 663 (Iowa Ct.App.1995). The first form of security is a retaining lien. *Id.* This gives an attorney the right to hold client property or funds in the possession of the attorney until the fee is paid. *Id.; see also* Wolfram, § 9.6.3, at 558. The second form of security is the charging lien. This gives an attorney the right to a portion of money or property obtained or recovered in litigation through the efforts of the attorney. *Feaker,* 538 N.W.2d at 663; *see also* Wolfram, § 9.6.3, at 558. These liens are an exception to the rule of professional conduct that prohibits an attorney from acquiring a proprietary interest in the client's case. *See* Iowa Code of Prof'l Responsibility DR 5–103(A)(1) (a lawyer may "[a]cquire a lien granted by law to secure a fee"). Nevertheless, this exception applies only to liens "granted by law." *Id.* The use of attorney liens not authorized by statute can constitute a violation of the rules of professional conduct. *See* Wolfram, § 9.6.3, at 558. *See generally* Thomas G. Fischer, Annotation, *Attorney's Assertion of Retaining Lien as Violation of Ethical Code or Rules Governing Professional Conduct,* 69 A.L.R.4th 974 (1989) (collecting and discussing cases considering ethical issues raised by the use of attorney liens). Thus, we turn to the Iowa statute governing attorney liens.

Iowa Code section 602.10116 provides:

An attorney has a lien for a general balance of compensation upon:

1. Any papers belonging to a client which have come into the attorney's hands in the course of professional employment.

2. Money in the attorney's hands belonging to a client.

3. Money due a client in the hands of the adverse party, or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed, from the time of giving notice in writing to such adverse party, or attorney of such party, if the money is in the possession or under the control of such attorney, which notice shall state the amount claimed, and, in general terms, for what services.

4. After judgment in any court of record, such notice may be given, and the lien made effective against the judgment debtor, by entering the same in the judgment or combination docket, opposite the entry of the judgment.

The first two subsections establish retaining liens, which are possessory in nature. *See id.* § 602.10116(1), (2). The second two subsections are in the nature of nonpossessory liens. *See id.* § 602.10116(3), (4). In particular, subsection (4) recognizes a charging lien upon a judgment obtained for the client as a result of the legal services rendered by the attorney to secure compensation for the services. *See id.* § 602.10116(4).

We have previously indicated that the charging lien recognized under the statute

is only on the judgment and does not reach real property, even when the real property was the subject of the litigation. *Keehn v. Keehn,* 115 Iowa 467, 471–72, 88 N.W. 957, 958 (1902); *see also* Note, *Nature of the Attorney's Lien in Iowa,* 26 Iowa L.Rev. 840, 845 (1941) ("[T]he Iowa lien has been held not to extend to real property involved in the litigation ....") (footnote omitted). While this approach is based on the language of the statute, the underlying rationale appears to be tied to the potential dangers of allowing attorney liens to attach to real property based on unliquidated, unadjudicated claims.[2] One court observed the pitfalls of permitting attorney liens on real property as follows:

> [t]he result of our approving the practice would allow members of the Bar to cloud title to real property with "claims of attorney lien" without resort to any adjudication of such claims. The potential for economic coercion by attorneys is obvious. In today's economic setting a client may well be forced to settle the attorney's claim for fees, no matter how unfounded, simply to gain the ability to convey, lease, or otherwise utilize the "liened" property.

*Ross v. Scannell,* 97 Wash.2d 598, 647 P.2d 1004, 1008–09 (1982).

█ These potential dangers were clearly exposed in this case. McKittrick was able to cloud title to Walker's property without any adjudication of the fee claim, and during a time period that made the former client very vulnerable to pressures of settlement. Clearly, the lien placed McKittrick in a superior position, which enabled her to obtain a portion of Walker's refinancing proceeds as well as a confession of judgment. We conclude the lien was not authorized by law and result-

ed in a form of economic coercion. It violated DR 1–102(5) and (6).

### 3. Confession of Judgment.

We next consider McKittrick's use of a confession of judgment to collect legal fees. At least one jurisdiction has concluded that the use of a confession of judgment by an attorney to collect a legal fee is improper. *Hulland v. State Bar,* 8 Cal.3d 440, 105 Cal.Rptr. 152, 503 P.2d 608, 613–14 (1972). The court focused on the imbalance created by clients who likely lack any real understanding of the character and effect of a confession of judgment and found the practice presented opportunities for overreaching with no judicial scrutiny. *Id.* Another court has determined that there is no per se rule against the use of a confession of judgment to collect legal fees, but requires attorneys to carefully ensure that the client fully understands and appreciates the process. *See Katlowitz v. Halberstam,* 284 A.D.2d 306, 726 N.Y.S.2d 438, 439 (App.Div.2001).

█ Although we have never established a per se rule against the use of confessions of judgment to collect legal fees, we agree such collection methods are a source of potential problems and should be used by attorneys with care and caution. Nevertheless, the use of the confession of judgment in this case became part of a greater overall pattern of aggressive and forceful collection conduct that adversely reflected on McKittrick's fitness to practice law. *See* Iowa Code of Prof'l Responsibility DR 1–102(A)(6). She placed an illegal lien on Walker's property and then offered the confession of judgment as a way out, without explaining the full consequences of the procedure and

---

**2.** Some state statutes specifically permit liens to attach to real property. *See Ross v. Scannell,* 97 Wash.2d 598, 647 P.2d 1004, 1008 n.

2 (1982) (collecting cases). The scope of attorney lien statutes varies from state to state. *See id.* at 1008.

without involving Walker's new attorney. Additionally, McKittrick promptly filed the confession of judgment and commenced garnishment proceedings without making any effort to discover the understandable confusion concerning the date the second payment was due. *See id.* EC 2–25. The use of a confession of judgment in this manner was oppressive and adversely reflected on the fitness of an attorney to practice law.

### 4. Overall Conduct.

■ We have identified several separate instances of conduct engaged in by McKittrick during the course of her collection of the fee that violated our rules of professional conduct. Moreover, the overall nature of her conduct reflected a general indifference to some of the core responsibilities that an attorney owes a client, and the legal system as a whole. *See People v. Smith*, 773 P.2d 522, 528 (Colo. 1989). McKittrick chose to pursue a fee claim that was tainted by her own professional neglect. McKittrick then waited to pursue the collection of the fee until the imposition of an illegal interest doubled the amount owed. She then used aggressive tactics and procedures over an extensive period of time that were both illegal and unprofessional and eventually contributed to a financial burden for the client that forced her into bankruptcy. This conduct, as a whole, adversely reflects on McKittrick's judgment and fitness to practice law. *See* Iowa Code of Prof'l Responsibility DR 1–102(A)(6). It was also "prejudicial to the administration of justice." *Id.* DR 1–102(A)(5).

### V. Discipline.

■ We have discussed our general principles governing attorney discipline in prior cases. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters*, 646 N.W.2d 111, 113–14 (Iowa 2002). To determine the appropriate level of discipline, we focus on " ' "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue" ' " to practice. *Id.* at 113 (citation omitted). We also consider aggravating and mitigating circumstances. *Id.* (citation omitted). Multiple instances of past disciplinary action is an aggravating circumstance. *Id.* Harm to the client is also an aggravating circumstance. *Id.* Yet, we do not overlook an attorney's service to the profession. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470, 478 (Iowa 2003). In the end, the discipline imposed is based on the facts of each case. *Id.*

A review of our prior cases reveals that the discipline imposed in cases of neglect typically "ranges from a public reprimand to a six-month suspension." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 655–56 (Iowa 2001). In *Frerichs*, we imposed a four-month suspension for unethical conduct by an attorney that included charging an illegal fee. 671 N.W.2d at 478. In *Committee on Professional Ethics & Conduct v. Michelson*, 345 N.W.2d 112 (Iowa 1984), we reprimanded an attorney for threatening a client with criminal prosecution in an effort to collect a fee. Yet, this case is particularly unique and involves conduct we have not previously considered.

■ We recognize the rigors of the practice of law and the difficulties that can be encountered by attorneys in meeting filing deadlines at times. We also understand the importance of dependable office staff to a busy attorney in meeting deadlines. Additionally, lawyers should be paid reasonable compensation for their professional services. Nevertheless, the seriousness of the neglect that occurred in this case intensified as the trial date ap-

proached, as did the potential prejudice to the client. The interests of the client demanded that McKittrick take prompt and thorough action. But the inaction continued, and McKittrick's failure to timely respond to the discovery prejudiced the client. Notwithstanding, the most serious conduct committed by McKittrick involved the methods she employed to pursue the collection of her fee. This too caused harm to the client and the profession. It was abusive and continued over a long period of time. Furthermore, McKittrick has been disciplined on two other occasions over fees. Considering all the facts and circumstances in light of the relevant factors and principles that govern discipline, we conclude McKittrick should be suspended from the practice of law in this state for a period of time of not less than three months.

## VI. Conclusion.

We suspend McKittrick's license to practice law with no possibility of rein-statement for a period of not less than three months from the date of filing of this opinion. The suspension imposed applies to all facets of the practice of law as provided in Iowa Court Rule 35.12(3). Upon application for reinstatement, McKittrick shall have the burden to prove she has not practiced during the period of suspension and that she meets all requirements of Iowa Court Rule 35.13. The costs of this proceeding are taxed against McKittrick.

**LICENSE SUSPENDED.**

All justices concur except TERNUS, J., who takes no part.