# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 04-6067 NI

_____

In re: On-Line Services Ltd.          *
                                      *
     Debtor.                          *
                                      *
Fiegen Law Firm, P.C.                 *
                                      *
     Respondent - Appellant,          *   Appeal from the United States
                                      *   Bankruptcy Court for the
          v.                          *   Northern District of Iowa
                                      *
Habbo G. Fokkena,                     *
United States Trustee,                *
                                      *
     Movant - Appellee,               *


_____

Submitted: February 11, 2005
Filed: March 16, 2005

_____

Before SCHERMER, FEDERMAN, and VENTERS, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

The Fiegen Law Firm, Ltd. (Fiegen), as attorney for debtor On-Line Services, Ltd. (On-Line), appeals an order that reduced its prepetition fees and expenses, held that those fees could not be paid from estate assets, and denied its claim for postpetition fees and expenses. We affirm in part, reverse in part, and remand.

FACTUAL BACKGROUND

In September of 2003, On-Line consulted with Fiegen regarding a possible bankruptcy filing. On December 8, 2003, the members of On-Line voted to retain Fiegen, to pay it the sum of $9,000 to represent On-Line, and to have Fiegen file a Chapter 7 bankruptcy petition on its behalf. On-Line made the final installment on the retainer on December 22, 2003, and those funds were deposited in Fiegen's trust account. Fiegen filed the bankruptcy case the next day. Prior to filing, the law firm drew down $547.50 from the trust account and applied that amount to prepetition services. At filing Fiegen disclosed that it had accepted a retainer in the amount of $8,791.00, plus the filing fee of $209.00.

Wesley Huisinga was appointed Chapter 7 trustee and filed an application to operate the business, which the bankruptcy court granted. Fiegen, however, continued to perform legal services for On-Line and to draw down the retainer. On June 24, 2004, the United States Trustee (the UST) filed a motion requesting the court to examine the compensation paid to Fiegen. Fiegen filed billing statements demonstrating that the law firm had provided $6,977.77 of legal services to On-Line through June 30, 2004, consisting of $3,693.27 in prepetition fees and expenses and $2,284.50 in post-petition fees and expenses. On August 26, 2004, the bankruptcy court held a hearing on the UST's motion. On October 28, 2004, the court ruled that the $8,452.50 remaining in Fiegen's trust account on the date of filing was property of the estate, and directed Fiegen to turn that amount over to the trustee. The Court further held that the reasonable value of the prepetition services performed by Fiegen was $2,380.00, but that only the $547.50, which had been paid prepetition, could be paid from the retainer. The court therefore held that the balance of the allowed

prepetition services, $1,946.77,[1] could not be paid from estate assets. The Court also denied Fiegen's application for fees and expenses incurred postpetition.

On November 8, 2004, Fiegen filed its notice of appeal and a motion to stay the court's order pending appeal, which the court granted.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[2] We review the legal conclusions of the bankruptcy court *de novo.*[3] Reversal is appropriate if the bankruptcy court misunderstood or misapplied the law.[4]

## DISCUSSION

There are four distinct issues before us. The first is whether the unapplied portion of the retainer ($8,452.50) became an asset of the bankruptcy estate. The second is whether Fiegen has a lien on the retainer to secure prepetition work for which he had not been paid at the time the petition was filed. The third is whether

[1]The $2,380.00 in allowed fees, plus allowed expenses of $114.27, less the $547.50 previously drawn.

[2]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[3]*First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

[4]*Gourley v. Usery,* 123 F.3d at 1093.

3

Fiegen has any claim against estate funds for postpetition services. And the fourth is the reasonable value of the services provided.

## A. WHETHER A RETAINER IS AN ASSET OF THE BANKRUPTCY ESTATE

The filing of a bankruptcy petition creates an estate comprised of all property in which the debtor holds either a legal or equitable interest:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of the following property, wherever located and by whomever held:
>
> > 1. Except as provided in subsections (b) and (c)(2) of this section, all equitable interests of the debtor in property as of the commencement of the case.[5]

The Eighth Circuit has articulated a three-part inquiry to determine whether a debtor's interest becomes part of the bankruptcy estate: (1) does the item at issue constitute property under section 541(a)(1); (2) does state law define the interest as property; and (3) did the debtor have the property interest at the time of filing.[6] Based on Fiegen's Statement of Compensation[7], he had been paid $8,791 for legal services rendered or to be rendered, to be charged at "normal hourly rates." The letter agreement[8] between Fiegen and On-Line provides that retainer fees are to be held in Fiegen's trust account, to be drawn upon at billing, and that if the trust funds are insufficient, the client is responsible for payment of the bill. That agreement further

---

[5]11 U.S.C. § 541(a).

[6]*See, e.g., Snyder v. DeWoskin (In re Mahendra)*, 131 F.3d 750, 755 (8th Cir. 1997), *cert. denied* 523 U.S. 1107 , 118 S. Ct. 1678 , 140 L. Ed. 2d 815 (1998).

[7]Appellant's Appendix, page 111.

[8]Appellant's Appendix, page 183.

provides that any funds remaining in the trust account at the end of the case will be either turned over to the Chapter 7 trustee, or refunded to On-Line.

Disregarding for the moment the effect of the statutory lien claimed by Fiegen, we find that the bankruptcy court properly applied the three-part test in concluding that the unearned portion of the retainer is an asset of the estate. Money is property under both state and federal law. As of the petition date, On-Line had an interest in the money remaining in Fiegen's trust account because it had not yet been applied to pay Fiegen for services that had been rendered.

## B. WHETHER A SECURITY RETAINER SECURES PAYMENT OF PREPETITION SERVICES PERFORMED BUT UNPAID

The bankruptcy court determined that the unapplied portion of the retainer, which came into the estate as of the petition date, was thereafter not subject to the security retainer claimed by Fiegen for either prepetition or postpetition services. Therefore, the court ordered the entire amount to be turned over to the estate.

Iowa allows an attorney to obtain a security retainer, or retaining lien, such as that claimed by Fiegen.[9]

An attorney has a lien for a general balance of compensation upon:

> 1. Any papers belonging to a client which have come into the attorney's hands in the course of professional employment.

---

[9]*Iowa Supreme Court Board of Professional Ethics and Conduct v. McKittrick*, 683 N.W.2d 554, 561 (Iowa 2004). Compare, *In re Brick Hearth Pizza, Inc.,* 302 B.R. 877 (Bankr. D. Minn. 2003) (holding that retaining liens had been abolished by the Minnesota legislature).

2. Money in the attorney's hands belonging to a client.[10]

A security retainer, also referred to as a retaining lien, gives the attorney the right to possess property or funds of the client until the fee is paid.[11] A security retainer is available only to secure attorney's fees and charges which are due for services already rendered.[12] And in Iowa, the extent of a security retainer is fixed at the time a question of priority arises.[13] In this case, the question of priority arose on the petition date. A security retainer, to the extent it is valid, is extinguished on the petition date with respect to any future advances.[14] As the Eighth Circuit has stated ,"[t]he debtor's equitable interest in the unearned portion of the retainer becomes property of the estate upon the filing of the petition."[15] The bankruptcy court so interpreted Iowa law and found that "[t]he retainer, to the extent attorneys had not drawn upon it prior to filing, became property of the estate when the case was filed."[16]

The issue, however, is whether such retainer remained subject to Fiegen's retaining lien for services which had been rendered prepetition, but for which Fiegen had not drawn down payment as of the bankruptcy filing. We believe that it is. A security retainer involves the attorney holding the client's money as a pledge – a

---

[10]Iowa Code § 602.10116(1) and (2) (1996).

[11]*McKittrick*, 683 N.W.2d at 561; Iowa Code §602.10116(1) and (2).

[12]*Tri City Equipment Co. v. Modern Real Estate Investments, Ltd.*, 460 N.W.2d 464, 465 (Iowa 1990); **7A C.J.S.** *Attorney & Client* § 445.

[13]*Tri City*, 460 N.W.2d at 465.

[14]*In re Mahendra*, 131 F.3d at 756.

[15]*Id.* at 756.

[16]Appellant's Appendix, page 230 (quoting *In re Cargo, Inc.*, Bankr. No. x90-00200S, slip op. at 3 (Bankr. N.D. Iowa Jan. 24, 1992)).

possessory security interest – and the Uniform Commercial Code expressly allows for a possessory security interest in money.[17] Once a bankruptcy case is filed, the amount of fees to be paid for prepetition services is subject to review by the court. Nevertheless, once determined, such fees are payable out of the funds in which Fiegen held a security interest as of the petition date. "By taking a retainer – even though it is considered a security retainer – a professional becomes a secured creditor, and hence has a claim on the retained funds prior to any other administrative claimant."[18] We hold, therefore, that the bankruptcy court erred in holding that the allowed  prepetition fees and expenses were not payable out of the retainer.

## C. WHETHER A CHAPTER 7 DEBTOR'S ATTORNEY HAS A CLAIM AGAINST THE BANKRUPTCY ESTATE FOR POSTPETITION SERVICES

The Chapter 7 trustee is the representative of the bankruptcy estate.[19] The Code, therefore, authorizes the trustee to employ attorneys, who do not have a conflict of interest, to assist him in that capacity, and to pay them for their services:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested

---

[17]Iowa Code § 554.9313; *In re Viscount Furniture Corp.,* 133 B.R. 360 (Bankr. N.D. Miss. 1991), citing *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989 (Bankr. N.D. Ill. 1990).

[18]Norton Bankruptcy Law and Practice 2d § 25:9, citing *In re Printing Dimensions, Inc.,* 153 B.R. 715, 719 (Bankr. D. Md. 1993)

[19]11 U.S.C. § 323(a).

persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[20]

. . .

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 –
>
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>>
>> (B) reimbursement for actual, necessary expenses.[21]

In *Lamie v. United States Trustee*,[22] the United States Supreme Court held that section 330(a)(1) of the Code does not authorize compensation awards to debtors' attorneys from estate funds, unless such attorneys have been employed by the trustee with approval of the court. Fiegen was not so employed by the trustee. The bankruptcy court, thus, did not err when it found that Fiegen was not entitled to payment of its postpetition fees and expenses from the unapplied portion of the security retainer, or from other assets of the estate.

Fiegen also claims that the court erred when it applied the holding in *Lamie* retroactively, since the Supreme Court case was not decided until after On-Line's bankruptcy case had been filed. However, in *Lamie,* the Court was simply articulating the law as it had existed since the Bankruptcy Reform Act of 1994. In any

---

[20] 11 U.S.C. § 327(a).

[21] 11 U.S.C. § 330(a)(1)(A) and (B).

[22] 540 U.S. 526, 124 S. Ct. 1023 (2004).

event, the Eighth Circuit had so held since 1997. In *Snyder v. DeWoskin (In re Mahendra)*,[23] the court denied compensation from the estate to debtor's attorney, Snyder, for postpetition services when the attorney had not been employed by the trustee.[24] Snyder contended that he held a lien on real estate of the debtor as security for the postpetition services. In rejecting that argument, the Eighth Circuit noted that debtor's interest in the real estate became an asset of the estate on the petition date. "At that point, debtor lost the right to authorize Snyder's legal services which could potentially further encumber this asset of the bankruptcy estate. Only the bankruptcy court could control the further encumbrance of the estate property."[25] Thus, the Supreme Court's holding in *Lamie* had been the law in this Circuit well before the On-Line bankruptcy case was filed. The bankruptcy court correctly held that Fiegen could not be compensated out of estate funds for postpetition services.

## D. WHETHER THE COURT CORRECTLY DETERMINED THE REASONABLENESS OF THE PREPETITION FEES

As we have explained, Fiegen is entitled to be compensated out of the retainer for allowed prepetition services but, as the bankruptcy court held, he is not entitled to compensation from estate assets for post-petition services. The final issue, then, is the value of the prepetition services. The bankruptcy court found that $3,032.50 worth of legal services and $114.27 of expenses had been earned or accrued prepetition, but had not been invoiced or paid as of the petition date.[26] In addition, Fiegen had drawn $547.50 from the retainer. The court held that it would not compensate Fiegen for prepetition work involving communicating with creditors or

---

[23]131 F.3d 750 (8th Cir. 1997).

[24]*Id.*

[25]131 F.3d at 755. *See also, In re Zepecki,* 277 F.3d 1041, 1046 (8th Cir. 2000) [same]

[26]Appellant's Appendix, page 232.

with its client, or for review of pleadings, motions, and communications, unless such actions were shown to benefit the estate. As a result, the court allowed prepetition fees in the amount of $2,380.00 and expenses of $114.27, less the $547.50 previously paid.

The court's use of a benefit-to-the-estate analysis would be appropriate as to fees paid to a professional for postpetition services, under Code Section 330. But, as stated, Fiegen is not entitled to compensation for such services. As to prepetition work, Section 329 allows the court to determine the reasonable value of such services:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> > (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to–
> >
> > (1) the estate . . .[27]

In reviewing the reasonableness of fees awarded to debtor's counsel for prepetition work, the issue is not benefit to the estate, but the reasonable value of the services provided to the debtor. Therefore, we hold that the bankruptcy court applied the wrong standard as to the prepetition services, and that, on remand, the court

---

[27]11 U.S.C. § 329(a).

should determine the reasonableness of Fiegen's fees under the standard of section 329 of the Code.

## E. CONCLUSION

Fiegen contends that the bankruptcy court's application of *Lamie* forces Chapter 7 debtor's attorneys to represent debtors without compensation. We disagree. The Supreme Court stated in *Lamie* that it "appears to be routine for debtors to pay reasonable fees for legal services before filing for bankruptcy to ensure compliance with the statutory requirements."[28] Even before *Lamie*, and at the time Fiegen filed the Chapter 7 case for On-Line, Section 330 of the Code provided that a debtor's attorney could not be paid out of estate funds for post-petition services unless that attorney is employed by the trustee. An attorney who accepts a Chapter 7 case on a flat fee basis may well be asked to later prove that the fee is a reasonable one, but once paid prepetition such fee is not an asset of the estate.[29] If, as here, debtor's counsel is instead paid a retainer to be applied against future services, such attorney may not be paid by the estate for postpetition services, absent appointment as trustee's counsel.

The Order of the bankruptcy court is affirmed in part, reversed in part, and remanded with instructions to determine the reasonableness of prepetition fees, with any allowed fees to be paid from the retainer held by Fiegen.

_____

_____

[28]*Id.* 540 U.S. at 538-39, 124 S. Ct. at 1032. We note that Fiegen contends that attorneys for corporate Chapter 7 debtors are not allowed to charge a flat fee in Iowa. We found no such restriction in the Local Rules. In any event, that issue is not before us here.

[29]*McDonald,* 114 B.R. at 997.