**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: MAX R. WAGERS, doing business
as Wagers Land & Cattle Company;
GEORGIA A. WAGERS,

      Debtors,

------------------------

CHRISTOPHER J. REDMOND, Trustee,

      Plaintiff - Appellee,

      v.

LENTZ & CLARK, P.A.; MAX R.
WAGERS; GEORGIA A. WAGERS,

      Defendants - Appellants,

------------------------

UNITED STATES OF AMERICA,

      Amicus Curiae.

No. 07-3000

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE**
**PANEL OF THE TENTH CIRCUIT**
**(BAP No. KS-06-056)**

---

Carl R. Clark (Jeffrey A. Deines and Andrew D. Hennier, with him on the briefs),
Lentz & Clark, P.A., Overland Park, Kansas, appearing for the Appellants.

Christopher J. Redmond (P. Glen Smith and Scottie S. Kleypas, with him on the

brief), Husch & Eppenberger, LLC, Leawood, Kansas, appearing for the Appellee.

Catherine Y. Hancock, Attorney, Civil Rights Division, Appellate Section (Peter D. Keisler, Assistant Attorney General; Roberta A. Deangelis, Acting General Counsel, P. Matthew Sutko, Attorney, and Sean E. Martin, Attorney, Executive Office for United States Trustees; William Kanter and Sushma Soni, Attorneys, Civil Rights Division, Appellate Section, on the brief), United States Department of Justice, Washington, DC, appearing for the Amicus Curiae.

---

Before **TACHA**, Chief Circuit Judge, **HARTZ**, and **McCONNELL**, Circuit Judges.

---

**PER CURIAM**.

---

This appeal arises out of an adversary proceeding brought by the trustee of a Chapter 7 bankruptcy estate ("Trustee") against the debtors and Lentz & Clark, a law firm representing the debtors. The Trustee sought recovery of funds held by Lentz & Clark as a retainer for post-petition legal services. The bankruptcy court resolved the matter in favor of Lentz & Clark, and the Trustee appealed to the Bankruptcy Appellate Panel ("BAP"). In reversing the bankruptcy court's decision, the BAP held that the firm's retainer for post-petition legal services is estate property. In addition, the BAP held that estate property could not be used to compensate Lentz & Clark for post-petition legal services. Lentz & Clark now appeal to this Court, and we exercise jurisdiction pursuant to 28 U.S.C. § 158(d)(1).

Although this is an appeal from a BAP decision, we independently review the decision of the bankruptcy court, reviewing the court's factual findings for clear error and its legal conclusions de novo. *See In re Kuhnel*, 495 F.3d 1177, 1179–80 (10th Cir. 2007). Having conducted this independent review, we AFFIRM the BAP's judgment and formally adopt its opinion, which is attached here as an appendix.

**FILED**

**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**November 28, 2006**

**Barbara A. Schermerhorn**
**Clerk**

APPENDIX

<u>PUBLISH</u>

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE MAX R. WAGERS, doing business as LAND & CATTLE CO., and GEORGIA A. WAGERS, <br><br> Debtors. | BAP No.   KS-06-056 |
| CHRISTOPHER J. REDMOND, Trustee, <br><br> Plaintiff – Appellant, <br><br> v. <br><br> LENTZ & CLARK, P.A., MAX R. WAGERS, and GEORGIA A. WAGERS, <br><br> Defendants – Appellees. | Bankr. No.  03-24484 <br> Adv. No.    04-6095 <br>  Chapter   7 <br><br> OPINION |

Appeal from the United States Bankruptcy Court
for the District of Kansas

Submitted on the briefs:[*]

Christopher J. Redmond, pro se, and Eric J. Howe of Husch & Eppenberger, LLC, Leawood, Kansas, for Plaintiff – Appellant.

----

[*]The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8012.  The case is therefore ordered submitted without oral argument.

Carl R. Clark and Jeffrey A. Deines of Lentz & Clark, P.A., Overland Park, Kansas, for Defendants – Appellees.

Before CLARK, BOHANON, and THURMAN, Bankruptcy Judges.

THURMAN, Bankruptcy Judge.

The Debtors' Chapter 7 trustee ("Trustee") appeals the Bankruptcy Court's judgment allowing the Debtors' counsel, Lentz & Clark, P.A. ("Firm"), to recover its post-petition attorney fees from a pre-petition retainer.  Because we are bound to follow the United States Supreme Court's decision in *Lamie v. United States Trustee*,[1] we reverse.

I.    BACKGROUND

The facts leading up to this appeal are uncontested.  The Debtors hired the Firm in 2003 to advise them about their financial situation.  The Debtors initially paid the Firm a $5,000 cash retainer.  In October 2003, the Debtors executed an assignment to the Firm, which assigned whatever tax refunds they might receive for tax years 2003 and earlier, as an additional retainer.  One day later, the Debtors filed a joint Chapter 7 petition.  Post-petition, the Debtors received tax refunds exceeding $50,000, all of which were delivered to the Firm and were deposited into its trust account pursuant to the Debtors' assignment.

After paying all of its pre-petition fees, the Firm still had approximately $1,000 remaining of the Debtors' initial cash retainer, which was applied in partial payment of post-petition fees.  From the filing of the petition in October

_____

[1] 540 U.S. 526 (2004).

2003, through September 2004, the Debtors' post-petition attorney fees and expenses totaled slightly more than $13,000. The Trustee contends that none of the Debtors' post-petition fees are recoverable by the Firm because 11 U.S.C. § 330(a)(1), as interpreted by *Lamie*, only allows compensation of a debtor's counsel for post-petition services if they were "employed as authorized by [11 U.S.C.] § 327."[2] The parties agree that the Firm was not employed pursuant to 11 U.S.C. § 327.

The Supreme Court decided *Lamie* in January 2004, approximately three months after the Debtors filed their Chapter 7 petition. In June 2004, the Trustee filed an adversary proceeding against the Firm, seeking recovery of all retainer funds that had not been applied to pre-petition fees, relying on *Lamie*. After subtracting agreed expenses, the Trustee claimed approximately $50,000 of the retainer funds on behalf of the estate. The Bankruptcy Court disagreed, however, and allowed the Firm to pay its post-petition fees from the retainers, finding that the Debtors' assignment had transferred full ownership of the retainers to the Firm, subject only to the Debtors' contingent right of reversion. Therefore, the Court reasoned, the retainer funds were neither the Debtors' property nor part of their estate. As such, the Bankruptcy Court ruled that payment of the Firm's post-petition fees was governed by 11 U.S.C. § 329, rather than by § 330.

II.     APPELLATE JURISDICTION

---

[2]*Id.* at 538.

This Court has jurisdiction to hear timely-filed appeals from final judgments and orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[3] Because the notice of appeal was timely filed within ten days of a final order, and because neither party to this appeal has elected to have the appeal heard by the district court, this Court has appellate jurisdiction.

## III.  ISSUES AND STANDARD OF REVIEW

This Court reviews a trial court's legal conclusions that are based on uncontested facts *de novo*.[4] This Court must also reach its own conclusions regarding state law legal issues, without deferring to the bankruptcy court's interpretation of state law.[5]

## IV.  DISCUSSION

Careful consideration of the *Lamie* decision is critical to this Court's resolution of the issue presented by this appeal. In *Lamie*, the debtor hired counsel to represent it in connection with a possible reorganization, and paid an initial $6,000 security retainer.[6] Following the filing of a Chapter 11 petition,

---

[3]28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.

[4]*Hofer v. Unum Life Ins. Co. of America*, 441 F.3d 872, 875 (10th Cir. 2006);  *In re Thompson*, 240 B.R. 776, 779 (10th Cir. BAP 1999).

[5]*Kelaidis v. Cmty. First Nat'l Bank (In re Kelaidis)*, 276 B.R. 266, 270 n.1 (10th Cir. BAP 2002).

[6]The three most common types of legal retainers are:  (1) "classic" (or "availability"), which ensures an attorney's availability to represent the client; (2)
(continued...)

debtor's counsel was appointed by the bankruptcy court to represent the debtor-in-possession.  Several months later, the case was converted to Chapter 7.  At that time, debtor's counsel still had not fully exhausted its pre-petition security retainer.  Debtor's counsel continued to represent the debtor post-conversion, although not appointed to do so by the court.  Some of the post-conversion work performed by debtor's counsel was at the Chapter 7 trustee's request.  Subsequently, the trustee opposed counsel's request for approximately $1,000 in post-conversion fees, claiming that the fees were not allowable under § 330(a)(1).

The bankruptcy court approved debtor's counsel's fee application and allowed it to retain the balance of the retainer, despite agreeing that § 330 precluded payment of counsel from estate funds, finding that the pre-petition security retainer did not constitute estate property.  In so doing, the bankruptcy court interpreted Virginia law to exclude pre-paid fees from estate property.  On appeal, the District Court for the Western District of Virginia affirmed.  The Court of Appeals for the Fourth Circuit affirmed the lower courts' conclusion that § 330 did not permit payment of post-conversion fees from estate property, but reversed their conclusion that the retainer was not property of the estate.

---

[6](...continued)
"flat fee," which consists of an agreed amount payable for performance of a specific task; and (3) "security," which consists of an advance payment that assures payment for future services.  *See In re E-Z Serve Convenience Stores, Inc.*, 299 B.R. 126, 130 (Bankr. M.D. N.C. 2003).  Typically, security retainers are placed into the attorney's trust account, out of which fees are paid once they have been earned.

Significantly, however, on appeal to the United States Supreme Court, the appellant questioned only whether § 330 authorizes payment to a debtor's attorney, and failed to challenge the Fourth Circuit's holding that the attorney's retainer was property of the estate.

The difficulty with § 330 arose with its amendment in 1994. Prior to amendment, § 330(a) specifically authorized payment "to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, *or to the debtor's attorney*."[7] Post-1994, § 330 authorized courts to award "to a trustee, an examiner, a professional person employed under section 327 or 1103- (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person . . . ."[8] Thus, the "principal, substantive alteration" of the section by this amendment was its deletion in § 330(a)(1) of the words "or to the debtor's attorney."[9] This deletion "created an apparent legislative drafting error," which left the section with a missing "or" that affects its grammar, and also destroyed "the neat parallelism" between § 330(a)(1) and 330(a)(1)(A).[10]

---

[7]11 U.S.C. § 330(a) (1986) (emphasis added).

[8]11 U.S.C. § 330(a) (1994).

[9]*Lamie v. United States Trustee,* 540 U.S. 526, 530-31 (2004).

[10]*Id.*

Finding the amended statute to be "awkward, and even ungrammatical," a majority of the Supreme Court refused to find it "ambiguous," which would have required consideration of legislative history.[11]  The Court also held that application of the "plain meaning" of § 330 did not lead to absurd results, which would have required treatment of the section as if it were ambiguous.[12]  Under the plain meaning of § 330, only attorneys that are employed under § 327 may be paid from estate property for post-petition services.[13]  Nonetheless, the Court stated that "compensation remains available to debtors' attorneys through various permitted means," including in individual Chapter 12 and 13 cases, and in Chapter 7 cases where the attorney is engaged by the trustee.[14]  The Court also noted with approval "the apparent sound functioning of the bankruptcy system" in the Fifth and Eleventh Circuits, both of which had previously applied the same

---

[11]*Id.* at 524.  Justice Kennedy's opinion was joined entirely by Justices Rehnquist, O'Connor, Souter, Thomas, Ginsburg, and Breyer.  Justice Scalia also joined the majority, except as to Part III of the opinion, in which legislative history is discussed.  Justice Stevens filed a separate concurrence, joined by Justices Souter and Breyer, in which he stated that, where a significant change in statutory law appears to result from a "scrivener's error," the Court has a duty to look at legislative history.  *Id.* at 542-43.  The concurrence agreed with the majority's reading of the statute, however, principally because the assumed drafting error had been timely brought to Congress' attention, which chose not to alter it.  *Id.* at 543.

[12]*Id.* at 536.

[13]*Id.* at 535.

[14]*Id.* at 536-37.

restrictions to payment of debtors' attorneys under § 330.[15]

The *Lamie* Court then discussed what since has been referred to as the

"retainer exception,"[16] to § 330's payment restrictions:

> It appears to be routine for debtors to pay reasonable fees for legal
> services before filing for bankruptcy to ensure compliance with
> statutory requirements.  So our interpretation accords with common
> practice.  Section 330(a)(1) does not prevent a debtor from engaging
> counsel before a Chapter 7 conversion and *paying reasonable
> compensation in advance* to ensure that the filing is in order.  Indeed,
> the Code anticipates these arrangements.  *See*, *e.g.*, § 329 (debtors'
> attorneys must disclose fees they receive from a debtor in the year
> prior to its bankruptcy filing and courts may order excessive
> payments returned to the estate).[17]

Accordingly, pursuant to *Lamie*, "[section] 330(a)(1) does not authorize

compensation awards to debtors' attorneys from estate funds, unless they are

employed as authorized by § 327.  If the attorney is to be paid from estate funds

under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and

approved by the court."[18]

---

[15]*Id.* at 537 (citing *Inglesby, Falligart, Horne, Courington & Nash, P.C. v.
Moore (In re Am. Steel Prod., Inc.)*, 197 F.3d 1354 (11th Cir. 1999) and *In re
Pro-Snax Distribs., Inc.*, 157 F.3d 414 (5th Cir. 1998)).

[16]*In re CK Liquidation Corp.*, 343 B.R. 376, 383-84 (D. Mass. 2006).

[17]*Lamie*, 540 U.S. at 537-38 (citation omitted) (emphasis added).

[18]*Id.* at 538-39.  The *Lamie* Court subsequently discussed the legislative
history leading to amendment of § 330 (though specifically finding that reliance
on such history was "unnecessary"), and concluded that the legislative history
"creates more confusion than clarity about the congressional intent."  *Id.* at 539.
Interestingly, when the Bankruptcy Code was revamped by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, § 330 was amended to allow
payment to ombudsmen appointed under §§ 332 and 333, but was otherwise left

(continued...)

In the present case, the Bankruptcy Court distinguished *Lamie,* finding that the pre-petition retainers belonged to the Firm under Kansas law. In so ruling, the Court made clear that its decision was driven, at least in part, by public policy. Noting that "resolution of the issues the Trustee has raised here will have a profound impact on bankruptcy courts, debtors, and their attorneys[,]" the decision also suggests that jurisdictions that found pre-petition retainers to be estate property prior to the *Lamie* case "may wish to more carefully consider the property interests which arise when debtors transfer property prepetition for payment of postpetition services" in light of *Lamie*.[19] The decision further explains that the conclusion that a pre-petition retainer is not estate property will promote the public policy of preserving the integrity of the bankruptcy system, because "[t]he bankruptcy system needs a robust, confident, and motivated debtors' bar," which requires that debtors' counsel be reasonably compensated for their work.[20] Although we whole-heartedly agree with this sentiment, we do not agree that this case can be distinguished from *Lamie*.

In *In re Barowsky*,[21] the Court of Appeals for the Tenth Circuit held, pre-

---

[18](...continued)
intact. Therefore, despite at least two opportunities to do so, the legislature has opted to leave the phrase "or to the debtor's attorney" out of § 330.

[19]*Opinion on Cross-Motions for Partial Summary Judgment ("Opinion")* at 14, 26, *in* Appellant Appendix [sic] ("App."), Vol. II at 384, 396.

[20]*Id.* at 34, *in* App. Vol. II at 404.

[21]946 F.2d 1516, 1519 (10th Cir. 1991).

*Lamie*, that a tax refund attributable to the pre-petition portion of the year in which a bankruptcy petition is filed is property of the estate. The Bankruptcy Court acknowledged that, pursuant to *Barowsky*, the tax refunds at issue in this case "would constitute property of the estate" but for the Debtors' assignment of them to the Firm.[22] Subsequently, the Bankruptcy Court reiterated the significance of the Debtors' assignment, relying on it to distinguish the present case from those in other jurisdictions that hold that pre-petition retainers for payment of post-petition attorney fees are property of the estate.[23] Thus, the Bankruptcy Court found that the Debtors' "absolute and unconditional" assignment "clearly expresses their intent to transfer all interest in the tax refunds to the Firm."[24] In so holding, the Bankruptcy Court relied, in part, on *In re Langestrom*, which found that an assignment nearly identical to the Debtors' was "an outright conveyance and transfer of the refund," rather than a security

---

[22]*Opinion* at 15, *in* App. Vol. II at 385.

[23]*Id.* at 25-26, *in* App. Vol. II at 395-96. *See United States Trustee v. Equip. Servs., Inc. (In re Equipment Servs., Inc.)*, 290 F.3d 739, 746-47 (4th Cir. 2002), *aff'd*, *Lamie v. United States Trustee*, 540 U.S. 526 (2004); *In re Mondie Forge Co.*, 154 B.R. 232, 236-39 (Bankr. N.D. Ohio 1993); *In re McDonald Bros. Constr.*, 114 B.R. 989, 999-1000 (Bankr. N.D. Ill. 1990).

[24]Debtors' assignment reads: "We, [Debtors], hereby assign to [the Firm], *for services rendered or to be rendered* any and all tax refunds, resulting from original or amended returns, received for 2003, and any and all prior years. Additionally, we, [Debtors], hereby appoint [the Firm] as attorney in fact to endorse and deposit tax refund checks received for 2003 and any and all prior years." *Opinion* at 16, *in* App. Vol. II at 386 (emphasis added).

interest.[25]  Significantly, however, the $70 assignment in *Langestrom* apparently

covered only a portion of the attorney fees already owed.  As such, the

assignment was made in payment of fees already earned and did, in fact,

constitute a full transfer of ownership.  The assignment in the present case was

intended to pay fees and costs as they were incurred, with the remainder, if any,

to be returned to the Debtors.  It therefore was not a full transfer of ownership.

As such, reliance on *Langestrom*, which is not binding on this Court in any event,

is misplaced.[26]

Federal law defines the debtor's estate and, pursuant to 11 U.S.C.

§ 541(a)(1), the estate includes "all legal or equitable interests of the debtor in

property."  In *Williamson v. Jones (In re Montgomery)*,[27] the Tenth Circuit held

that "the scope of section 541 is broad and should be generously construed."  As

---

[25]300 F. Supp. 538, 541 (S.D. Ill. 1969).

[26]In addition, reliance on the assignment to establish full transfer of ownership breaks down in light of the Bankruptcy Court's failure to distinguish between the tax refunds, which were formally assigned, and the cash retainer, which was not.  The Bankruptcy Court specifically excluded the cash retainer remaining after payment of pre-petition fees from the estate, stating, "because the cash was transferred for the same purpose as the tax refunds were assigned . . . the cash was likewise an assignment transferring all of the Debtors' right, title, and interest."  *Opinion* at 18-19, *in* App. Vol. II at 388-89.  Either the assignment distinguishes this case, or it does not.  If simple payment of a cash retainer constitutes an "assignment" that transfers full ownership of those funds, then every retainer paid without an express reservation of ownership would belong solely to the attorney.  This is not, however, what the majority of courts considering the issue have held.

[27]224 F.3d 1193, 1194 (10th Cir. 2000).

-11-

such, and in light of both "Congress' clear intent" and "consistent authority,"

*Montgomery* held that even a debtor's "contingent interests" are included in the

estate under § 541.[28]

With this in mind, we turn to state law in order to determine the Debtors'

interest in property in the present case.[29]  In this case, the law of Kansas applies.

In 1998, the Kansas Supreme Court held, in an attorney disciplinary proceeding,

that proper handling of retainer funds "turns on when the money is deemed

'earned,' for once money is earned it is the lawyer's."[30]  Thus, a retainer paid as

an advancement for future services is not earned by the attorney until services

have been performed, and "remains the client's money" until then.[31]  Such

retainers are required by Kansas law to be kept in the attorney's trust account

until services have been performed.[32]  The Firm and the Trustee apparently agree

that both retainers paid in this case were security retainers, given to the Firm to

ensure payment of fees the parties expected it to earn.  Therefore, under Kansas

law, the retainers held by the Firm were required to be held in a trust account

---

[28]*Id.* at 1195.

[29]*Butner v. United States*, 440 U.S. 48, 54-55 (1979).

[30]*In re Scimeca*, 962 P.2d 1080, 1091 (Kan. 1998).

[31]*Id.*

[32]*Id.*

until services were rendered.[33]

The Bankruptcy Court found the *Scimeca* case inapposite, and that court's ownership statement to be *dicta*. Though the statement may be *dicta*,[34] it is still relevant to this Court's effort to predict how the Kansas Supreme Court would rule if the ownership issue were directly presented.[35] In just such an effort, the Bankruptcy Court for the District of Kansas ruled, pre-*Lamie*, that "[u]nder Kansas law, an advance fee payment retainer to be earned by future services, is property of the client and thus is property of that client's bankruptcy estate."[36] The Bankruptcy Court in this case declined to follow *Hodes*, stating that its conclusion was "based on a reading of *Scimeca* which this Court does not adopt."[37]

However, at least three courts from other jurisdictions have held, post-

---

[33]*Id.* at 1092, relying on Model Rules of Prof'l Conduct R. 1.15 (1995).

[34]The issue to which the statement applied was simply whether the retained funds were required, by Kansas's extant rules of professional conduct, to be kept in the attorney's trust account. As such, ownership of the funds was not directly at issue.

[35]*See In re Kester*, 339 B.R. 749, 753 (10th Cir. BAP 2006) (where no state high court rulings exist, appellate court must endeavor to predict what its ruling would be).

[36]*In re Hodes*, 239 B.R. 239, 243 (Bankr. D. Kan. 1999), *aff'd in part and rev'd in part*, 289 B.R. 5, 13 (D. Kan. 2003) (on appeal, the district court assumed, rather than decided, that the retainers were property of the estate because the appellees' attorneys failed to appeal the bankruptcy court's finding to that effect).

[37]*Opinion* at 25, *in* App. Vol. II at 395.

*Lamie*, that money paid pre-petition to secure payment of attorney's fees remains property of the client until earned by provision of services.[38]  The most thorough discussion of this issue is in *CK Liquidation*, in which the District Court of Massachusetts reversed the bankruptcy court's award of fees, stating that, "[b]ecause R & G was not appointed as the Debtor's Chapter 7 counsel, it is entitled to payment for services rendered post-conversion only if 1) *Lamie*'s 'retainer exception' authorizes payment, 2) the Retainer was not property of the Chapter 7 estate upon conversion, or 3) some other exception applies."[39]

The law firm in *CK Liquidation* argued on appeal that the *Lamie* retainer exception must apply to security retainers because the *Lamie* Court stated that acceptable advance payments were "common practice," and flat fee retainers are atypical in Chapter 11 cases.[40]  However, this reasoning was rejected by the District Court, based on both the express language of *Lamie* and the petitioner's brief in that case, from which the court was convinced that the retainer exception applies only to flat fee retainers because such retainers become the attorney's property when paid.[41]  While noting that its decision "may place bankruptcy counsel in the difficult position of choosing between performing fiduciary

[38]See *Fiegen Law Firm, P.C. v. Fokkena (In re On-Line Servs. Ltd.)*, 324 B.R. 342, 346 (8th Cir. BAP 2005); *Barron v. Countryman*, 432 F.3d 590. 595-96 (5th Cir. 2005); *In re CK Liquidation Corp.*, 343 B.R. 376, 385 (D. Mass. 2006).

[39]*CK Liquidation Corp.,* 343 B.R. at 383.

[40]*Id.*

[41]*Id.* at 383-84.

obligations to clients despite the potential for nonpayment and risking professional malpractice claims," the *CK Liquidation* court held that it was bound by the ruling in *Lamie*.[42] Along the same lines, the *Lamie* Court noted that "[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'"[43] Likewise, it is beyond this Court's province to ignore *Lamie* in favor of a preferred result.

V. CONCLUSION

This Court shares the Bankruptcy Court's concerns regarding adequate payment of Debtors' counsel. However, we do not agree that the retainers in this case can properly be considered to be outside of the Debtors' estate. Whereas the Bankruptcy Court found that the Debtors retained only a contingent, reversionary interest in the retainer, we find it more likely that the Kansas Supreme Court would hold that it is the Firm that holds only a contingent interest in the funds. In any event, even a contingent, reversionary interest is included in a debtor's estate under § 541.[44] Therefore, since the assigned tax refunds were property of

---

[42]*Id.* at 385.

[43]*Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004) (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring)).

[44]*Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193, 1194-95 (10th Cir. 2000).

the Debtors' estate, and the Firm was not employed by the Trustee pursuant to § 327, our decision is dictated by the United States Supreme Court's opinion in *Lamie*. We hold that the Firm may not use pre-petition funds to pay its post-petition fees under the circumstances of this case. The Bankruptcy Court's decision to the contrary is reversed.